## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

FREEDOM MORTGAGE CORPORATION,

Plaintiff/Counterclaim
Defendant,

v.

LOANCARE, LLC

Defendant/Counterclaim
Plaintiff.

Civil No. 16-2569 (RMB/KMW)

**OPINION**

APPEARANCES:

LANDMAN CORSI BALLAINE & FORD, P.C.
By: Jerry A. Cuomo, Esq.; Timothy J. Collazzi, Esq.;
Mark S. Landman, Esq. (<u>pro hac vice</u>)
One Gateway Center, 4th Floor
Newark, New Jersey 07102
        Counsel for Freedom Mortgage Corp.

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
By: Robert J. Lack, Esq.; Ricardo Solano, Jr., Esq.
One Gateway Center, 25th Floor
Newark, New Jersey 07102-5311
        Counsel for LoanCare, LLC

BOIES SCHILLER FLEXNER LLP
By: Stuart H. Singer, Esq. (<u>pro hac vice</u>); Sabria A. McElroy,
Esq. (<u>pro hac vice</u>); Pascual A. Oliu, Esq. (<u>pro hac vice</u>)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
        Counsel for LoanCare, LLC

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a Motion for Judgment on the Pleadings, filed by Plaintiff/Counterclaim Defendant Freedom Mortgage Corporation ("Freedom")[Dkt. No. 56], seeking dismissal of Counts One (Fraud), Two (Conversion), Three (Tortious Interference), and Five (Unjust Enrichment) from the Amended Counterclaim of Defendant/Counterclaim Plaintiff LoanCare, LLC("LoanCare")[Dkt. No. 68]. Because Virginia law governs the dispute between the parties,[1] Freedom contends that LoanCare's tort and unjust enrichment claims are subsumed by LoanCare's Breach of Contract claim (Count Four) under Virginia's "source of duty" rule. This Court agrees.

## I.  **FACTUAL BACKGROUND**

For approximately 15 years, LoanCare, a mortgage subservicer, worked with Freedom, a full-service residential mortgage lender, to service various mortgage loans. From February 2010 through June 2016, the terms of the parties' relationship was governed by the Amended and Restated Subservicing Agreement, effective February 1, 2010 (the "Subservicing Agreement"). In January 2016, Freedom advised LoanCare that it planned to terminate the Subservicing Agreement

---

[1] Pursuant to § 10.6 of the Subservicing Agreement, "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to its conflict of laws principles."

on June 30, 2016. In anticipation of the termination date, Freedom instructed LoanCare that it should transfer any loans that LoanCare was servicing back to Freedom by May 3, 2016. In the Amended Counterclaim, LoanCare alleges that all loans it was servicing for Freedom were transferred back by May 3, 2016. Between May 4 and 5, 2016, LoanCare alleges that it wired a total of $78,041,076.81, to Freedom, reflecting remaining borrower escrow balances on the transferred loans.

While transferring all loans and remaining escrow balances back to Freedom, LoanCare contends that it also attempted approximately 20 debits, totaling $111,687,983.53, from Freedom's Custodial Accounts to pay/reimburse LoanCare for Advances and amounts sent to Freedom associated with borrowers' escrow funds. LoanCare alleges that these debits were submitted in accordance with past practices and the terms of the Subservicing Agreement. Freedom, however, allegedly instructed the banks holding its Custodial Accounts to refuse the debits. LoanCare alleges that Freedom eventually wired $66,134,172.36 to LoanCare on May 12, 2016, and then wired another $17,961,071.64 on May 17, 2016. LoanCare claims that Freedom never remitted the remaining $23,876,799.71.

In May 2016, Freedom commenced this suit against LoanCare, claiming, among other things, breach of contract, unjust enrichment, and other misconduct by LoanCare. On July 8, 2016,

LoanCare filed an Answer and Counterclaim to Freedom's Complaint [Dkt. No. 17].  Subsequently, LoanCare filed the Amended Counterclaim on June 4, 2018 [Dkt. No. 68].  Now, Freedom moves for Judgment on Pleadings [Dkt. No. 56], seeking dismissal of LoanCare's fraud, tort, and unjust enrichment claims from the Amended Counterclaim.

## II.  LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move for a judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed.R.Civ.P. 12(c). Rule 12(c) is designed to eliminate excessive litigation when material facts are not in dispute and a judgment on the merits may be derived solely from the content of the pleadings. See 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). In order to grant a motion for judgment on the pleadings, the moving party must clearly demonstrate that there are no issues of material fact and that it is entitled to judgment as a matter of law. See Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir.2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir.1988)).

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is identical to that for a motion to dismiss under Rule 12(b)(6). See Zimmerman v. Corbett, 873 F.3d

414, 417 (3d Cir. 2017). "Dismissal of a complaint pursuant to
Rule 12(b)(6) is proper 'only if it is clear that no relief
could be granted under any set of facts that could be proved
consistent with the allegations.'" Hackensack Riverkeeper, Inc.
v. Del. Ostego Corp., 450 F.Supp.2d 467, 484 (D.N.J. 2006)
(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In
considering this motion for judgment on the pleadings, the court
must accept all of the allegations in the pleadings of the non-
moving party as true and draw all reasonable inferences in favor
of the non-moving party. Zimmerman, 873 F.3d at 417.

## III. **ANALYSIS**

Freedom moves for judgment on the pleadings, arguing that
LoanCare's fraud, tort, and unjust enrichment claims are barred
by Virginia's "source of duty" rule. To avoid turning every
breach of contract into a tort claim, the source of duty rule
bars tort claims that implicate a duty owed solely through
contract. See Augusta Mut. Ins. Co. v. Mason, 274 Va. 199, 205
(2007) (citing Richmond Metro. Auth. v. McDevitt St. Bovis,
Inc., 256 Va. 553, 558 (1998)). Freedom argues that LoanCare's
fraud, tort, and unjust enrichment claims must be dismissed
because they are grounded in duties arising under the
Subservicing Agreement, rather than any independent common law
duties. This Court agrees.

First, LoanCare asserts a fraud claim in Count One of the
Amended Counterclaim. To simultaneously pursue a fraud and
breach of contract claim, LoanCare must allege that Freedom
"committed an act of fraud independent of the contractual
relationship." Dunn Const. Co. v. Cloney, 278 Va. 260, 266
(2009)(emphasis added). False or misleading statements to
induce payments already due under a contract, do not take the
fraud out of the context of the contractual relationship. Id.
at 268 ("[t]he fact that the representation was made in order to
obtain payment… does not take the fraud outside of the contract
relationship, because the payment obtained was also due under
the original terms of the contract").

As currently pled, LoanCare's fraud claim fails because it
is tied directly to LoanCare's expectations under the
Subservicing Agreement. LoanCare alleges that Freedom tricked
it into wiring large sums of money to Freedom, even though
Freedom had full knowledge that it would later refuse LoanCare's
requests for payments and reimbursements. Amended Counterclaim,
¶34. However, LoanCare explicitly acknowledges that it followed
through on Freedom's wire payment instructions based on
LoanCare's "understanding" that it would be paid and reimbursed
"pursuant to the terms of the Subservicing Agreement" Id. at
¶34. Notably, LoanCare never alleges that its duty to make the
wire transfers, and Freedom's obligation pay LoanCare were not

governed by the Subservicing Agreement. As such, LoanCare's
fraud claim must be dismissed because it is merely a reframed
cause of action for breach of contract, based on Freedom's
alleged failure to pay fees due under the Subservicing
Agreement.

Second, LoanCare asserts a conversion claim (Count Two)
against Freedom, stating that Freedom is "wrongfully exercising
dominion and control over $22,693,762.17 in the Custodial
Accounts, and has deprived LoanCare of its possession of the
funds." Id. at ¶41. Virginia courts have previously recognized
that the Virginia source of duty rule can act to bar a
conversion claim when a party merely "withholds money that he is
supposed to pay on a contract." Taveira v. Vieira, 2015 Va. Cir.
LEXIS 90, at *17 (Va. Cir. Ct. May 29, 2015)(City of Virginia
Beach). In this case, that is exactly what LoanCare currently
alleges. Moreover, although the Supreme Court of Virginia has
recognized that an alleged seizure of property occurring after a
contract has been terminated sounds in tort rather than in
contract, see Condo. Servs. v. First Owners' Ass'n of Forty Six
Hundred Condo., Inc., 281 Va. 561, 574 (2011), LoanCare does not
allege that the Subservicing Agreement had already ended at the
time of the alleged conversion in May 2016. Rather, LoanCare
alleges only that Freedom had given LoanCare notice that it
would be terminating the agreement at the end of June 2016.

Third, LoanCare's tortious interference claim (Count Three), as currently pled, also fails because it is premised upon damages resulting from Freedom's breach of the Subservicing Agreement by failing to remit funds to LoanCare. The sole basis for LoanCare's tortious interference claim is that by withholding payment/reimbursement, Freedom hindered LoanCare's ability to operate. In a concurring opinion, Justice McClanahan of the Supreme Court of Virginia explained "when such a breach is the sole basis for asserting tortious interference, it is the source of duty rule that renders the claim deficient as a matter of law." Preferred Sys. Sols., Inc. v. GP Consulting, LLC, 284 Va. 382, 407-08 (2012)(McClanahan, J., concurring). Therefore, as currently alleged in the Amended Counterclaim, the cause of action for tortious interference is inextricably intertwined with the breach of contract claim.

Finally, Freedom correctly argues that LoanCare's unjust enrichment claim (Count Five) must also be dismissed, because an express contract governed the relationship between the parties. Indeed, "Virginia law is clear that a plaintiff cannot raise an unjust enrichment claim where an express contract governs the alleged wrongdoing." Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd., 859 F. Supp. 2d 771, 781 (E.D. Va. 2012), aff'd, 505 F. App'x 242 (4th Cir. 2013). Here, the unjust enrichment claim must be dismissed because the

Subservicing Agreement was operative at the time of the alleged misconduct. It is possible that LoanCare could have asserted a claim for unjust enrichment, as an alternative theory of recovery to breach of contract, but that would have required LoanCare to allege in that count that no contract existed between the parties. See Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc., 542 F. Supp. 2d 452, 465 (E.D. Va. 2008).

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, the Court will grant Freedom's Motion for Judgment on the Pleadings and dismiss Counts One, Two, Three, and Five of the Amended Counterclaim without prejudice. Having requested an opportunity to replead these claims with a greater degree of specificity, LoanCare will be granted leave to file a Second Amended Counterclaim that addresses these deficiencies, to the extent it can consistent with this Opinion, within thirty (30) days. An appropriate Order shall issue on this date.

DATED: November 30, 2018

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE