IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>LOANCARE, LLC<br><br>Defendant/Counterclaim Plaintiff. | Civil No. 16-2569 (RMB/KMW)<br><br>OPINION |

**APPEARANCES:**

LANDMAN CORSI BALLAINE & FORD, P.C.
By: Jerry A. Cuomo, Esq.; Alexander B. Imel, Esq.;
Timothy J. Collazzi, Esq.; Mark S. Landman, Esq. (pro hac vice)
One Gateway Center, 4th Floor
Newark, New Jersey 07102
   Counsel for Freedom Mortgage Corp.

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
By: Robert J. Lack, Esq.; Ricardo Solano Jr., Esq.
One Gateway Center, 25th Floor
Newark, New Jersey 07102-5311
   Counsel for LoanCare, LLC

BOIES SCHILLER FLEXNER LLP
By: Stuart H. Singer, Esq. (pro hac vice); Sabria A. McElroy, Esq. (pro hac vice); Pascual A. Oliu, Esq. (pro hac vice);
Evan Ezray, Esq. (pro hac vice)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
   Counsel for LoanCare, LLC

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a Motion to Dismiss [Dkt. No. 101], filed by Plaintiff/Counterclaim Defendant Freedom Mortgage Corporation ("Freedom") seeking dismissal of Count One (Fraudulent Inducement), Count Two (Conversion Before Termination), Count Three (Conversion After Termination), and Count Five (Unjust Enrichment) from the Second Amended Counterclaim ("SAC")[Dkt. No. 90], filed by Defendant/Counterclaim Plaintiff LoanCare, LLC("LoanCare"). Because Virginia law governs the dispute between the parties,[1] Freedom contends that LoanCare's fraudulent inducement, conversion, and unjust enrichment claims are subsumed by LoanCare's Breach of Contract claim (Count Four) under Virginia's "source of duty" rule. For the reasons stated herein, the Motion to Dismiss will be **GRANTED IN PART**, as to Count Two, but **DENIED IN PART**, as to Count One, Count Three, and Count Five.

I.  **FACTUAL BACKGROUND**

For approximately 15 years, LoanCare, a mortgage subservicer, worked with Freedom, a full-service residential

---

[1] The Court shall apply Virginia law to this matter pursuant to § 10.6 of the Subservicing Agreement, which states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to its conflict of laws principles." See Dkt. No. 1-2, at 38.

2

mortgage lender, to service various mortgage loans. From February 1, 2010 through June 30, 2016, the terms of the parties' relationship were governed by the Amended and Restated Subservicing Agreement (the "Subservicing Agreement" or "Agreement"). In January 2016, Freedom advised LoanCare that it planned to terminate the Subservicing Agreement on June 30, 2016.

In anticipation of the termination date, Freedom instructed LoanCare to transfer any loans that it was servicing back to Freedom by May 3, 2016. Accordingly, in early May 2016, Freedom allegedly told LoanCare to transfer funds from shared custodial accounts back to Freedom. Based on these instructions, LoanCare scheduled various wire transfers and Automated Clearing House ("ACH") debits, totaling $111,715,004.26, to remit the funds back to Freedom from the custodial accounts. Meanwhile, unbeknownst to LoanCare, Freedom allegedly worked directly with the banks to seize and block LoanCare's access to these very same accounts. When it came time to execute the scheduled transfers, LoanCare was unable to access the custodial accounts and the banks defaulted to pulling the full $111,715,004.26 from LoanCare's own cash accounts.

LoanCare alleges that Freedom, effectively, collected the requested funds twice: once from the custodial accounts and once from LoanCare's own accounts. LoanCare states that it

3

eventually recovered $89,021,242.09, but that Freedom continues to unlawfully withhold funds totaling $22,693,762.17. See SAC, at ¶ 66. Additionally, LoanCare contends that it was forced to borrow millions of dollars, with interest, to cover the shortfalls caused by Freedom's actions. Id. at ¶ 64.

In May 2016, Freedom commenced this suit against LoanCare, claiming, among other things, breach of contract, unjust enrichment, and other misconduct by LoanCare. On July 8, 2016, LoanCare filed an Answer and Counterclaim to Freedom's Complaint [Dkt. No. 17]. Subsequently, LoanCare filed an Amended Counterclaim on June 4, 2018 [Dkt. No. 68]. After Freedom moved for Judgment on Pleadings [Dkt. No. 56], this Court issued an Opinion and Order on November 30, 2018 [Dkt. Nos. 83, 84], dismissing LoanCare's fraud, tort, and unjust enrichment claims from the Amended Counterclaim. On December 31, 2018, LoanCare filed the SAC. Now, this matter comes before the Court upon Freedom's Motion to Dismiss [Dkt. No. 101], once again asking the Court to dismiss LoanCare's fraud, tort, and unjust enrichment claims, as repleaded in the SAC.

## II. **LEGAL STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing the non-moving party's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. ANALYSIS**

In its Motion to Dismiss, Freedom argues that LoanCare's fraud, tort, and unjust enrichment claims are barred by Virginia's "source of duty" rule. "To avoid turning every breach of contract into a tort" claim, the source of duty rule bars tort claims that implicate a duty owed solely through contract. See Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 293 (Va. 2007)(citing Spence v. Norfolk & W. R.R. Co., 22 S.E. 815, 818 (Va. 1895) and Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 345 (Va. 1998)). As applied to this case, Freedom argues that LoanCare's fraud, tort, and unjust enrichment claims must be dismissed because they are grounded in duties arising under the Subservicing Agreement, rather than any independent common law duties.

   *A.   Fraudulent Inducement (Count One)*

In Count One of the SAC, LoanCare alleges that Freedom has wrongfully taken $22,693,762.17 through "deceptive and fraudulent conduct intended to mislead LoanCare." See SAC, at ¶ 80. Meanwhile, LoanCare also alleges, in Count Four, that

Freedom breached the Subservicing Agreement by failing to account for and return the same $22,693,762.17 to LoanCare.

Freedom argues that Virginia's source of duty rule precludes LoanCare from pleading both claims, for the same damages, simultaneously. Under the source of duty rule, "[w]here the duty that gives rise to the alleged misrepresentation is one that is required by contract, there can be no recovery in tort." Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc., 542 F. Supp. 2d 452, 460–61 (E.D. Va. 2008). To simultaneously pursue a fraud and breach of contract claim, a party must allege that the other "committed an act of fraud independent of the contractual relationship." Dunn Const. Co. v. Cloney, 682 S.E.2d 943, 946 (Va. 2009)(emphasis added). However, false or misleading statements to induce payments already due under a contract, do not take the fraud out of the context of the contractual relationship. Id. at 947 ("[t]he fact that the representation was made in order to obtain payment... does not take the fraud outside of the contract relationship, because the payment obtained was also due under the original terms of the contract.").

This Court previously dismissed a prior iteration of the LoanCare's fraud claim, holding that the claim was "tied directly to LoanCare's expectations under the Subservicing Agreement." Dkt. No. 84, at 6. In the SAC, LoanCare attempts to

cure this deficiency by portraying the fraud claim as "independent" from the breach of contract claim. Although the Agreement created an obligation to turn the custodial funds over to Freedom upon termination, see Subservicing Agreement at § 5.5, LoanCare alleges that "[t]he timing and manner of transferring these funds were not governed by the Subservicing Agreement." LoanCare describes the wire transfers requested by Freedom as "special accommodation[s]" that were "not required under the Subservicing Agreement," because the "Subservicing Agreement does not state how funds are transferred upon termination of the agreement." SAC, at ¶¶ 81, 85.

In alleging fraudulent inducement, LoanCare contends that Freedom's "misrepresentations and omissions" resulted in financial harm to LoanCare. Specifically, LoanCare states that Freedom's "request to move funds, without disclosing that Freedom would block the movement of funds, was deceptive and fraudulent conduct intended to mislead LoanCare." See SAC, at ¶80. Additionally, LoanCare asserts that "Freedom actively concealed the fact that it worked with the banks to block LoanCare's access to the custodial accounts" and that "Freedom knew that if LoanCare was made aware of Freedom's actions, LoanCare would not have made wire transfers to Freedom for the funds requested." Id., at ¶ 90.

Based on LoanCare's allegation that it was not contractually required to turn over the custodial accounts in the manner requested by Freedom, along with LoanCare's claim that it would not have initiated the transfers if it had known that Freedom had already seized the accounts, the Court will allow LoanCare's fraudulent inducement claim to proceed alongside the breach of contract claim. Although the Court will allow this claim to proceed at this stage of this litigation, the Court will not preclude Freedom from raising this issue again at a later point if the evidence fail to support the pleadings.

### B.  *Conversion (Count Two & Count Three)*

LoanCare's SAC includes two conversion claims against Freedom: one before termination of the Subservicing Agreement(Count Two), and one after termination of the Agreement (Count Three).  As to pre-termination conversion, LoanCare alleges that "Freedom converted LoanCare's funds by blocking $111,715,004.26 in debits from the custodial accounts needed to complete the transfer." SAC, at ¶ 101.  As to post-termination conversion, LoanCare alleges that "after the Subservicing Agreement terminated, Freedom moved these funds from the custodial accounts into non-custodial Freedom accounts, despite the fact that these were LoanCare funds."  LoanCare contends

9

that "Freedom has admitted that it is holding over $21 million that it took during this May 2016 transfer in a segregated account." Id., at ¶ 109.

As a threshold matter, this Court recognizes that Virginia courts do, under certain circumstances, allow plaintiffs to plead conversion in conjunction with a breach of contract claim. In its motion, Freedom argues that LoanCare's conversion claims must be dismissed because the source of any duty owed to LoanCare would stem from the contract, rather than common law. In support of this argument, Freedom notes that some Virginia Courts have held that the source of duty rule bars a conversion claim when a party merely "withholds money that he is supposed to pay on a contract." Taveira v. Vieira, 2015 WL 4086948, at *6 (Va.Cir.Ct. May 29, 2015). However, the Supreme Court of Virginia has recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." See Combined Ins. Co. of Am. v. Wiest, 578 F.Supp.2d 822, 831 (W.D.Va.2008)(quoting Richmond Metro., 507 S.E.2d at 348. Indeed, many Virginia Courts have held that "the duty not to convert the property of another for one's own purposes exists in the absence of any contract, and thus provides the basis for an independent tort claim." Redman v. Fed. Nat. Mortg. Ass'n, 2015 WL 149833, at *3 (W.D. Va. Jan. 12, 2015)(internal citations omitted).

Under Virginia law, conversion is defined as "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." Acken v. Kroger Co., 58 F. Supp. 3d 620, 633 (W.D. Va. 2014)(quoting Fed. Ins. Co. v. Smith, 144 F.Supp.2d 507, 517–18 (E.D.Va.2001), aff'd, 63 Fed.Appx. 630 (4th Cir.2003))(internal quotations omitted). To establish a claim for conversion, the plaintiff must prove both "the ownership or right to possession of the property at the time of the conversion" and "the defendant's conversion by the wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession." Fed. Ins. Co., 144 F.Supp.2d at 518.

First, the Court finds that LoanCare cannot state a conversion claim as to the custodial accounts, either before or after termination, because LoanCare has not alleged ownership or right of possession. In the SAC, LoanCare alleges that Freedom seized "exclusive control and possession of the custodial accounts and funds therein" before termination of the Subservicing Agreement. However, LoanCare acknowledges that these were "shared" custodial accounts and much, if not all, of the money in those accounts (such as escrow balances and funds to be advanced on behalf of borrowers) was not actually "property of" LoanCare or Freedom. Furthermore, the terms of the Subservicing Agreement indisputably required LoanCare to

return full possession and control over the custodial accounts to Freedom upon termination. As such, LoanCare does not question Freedom's right to possess the custodial accounts, but rather the manner in which Freedom took exclusive possession. This distinction would be addressed through a breach of contract claim, not conversion claim. Because LoanCare has not alleged ownership or a right to possession of the custodial accounts, LoanCare cannot claim that Freedom converted those funds.

Although LoanCare cannot state a conversion claim regarding the custodial accounts, the Court finds that LoanCare has sufficiently stated a claim for conversion of the funds disbursed from LoanCare's own cash accounts, but only after termination of the Subservicing Agreement. On this issue, the timing of the alleged conversion is of key importance. Before termination of the Agreement, LoanCare scheduled and initiated the transactions that culminated in funds being drawn from its own cash accounts. After termination, Freedom allegedly moved those funds into separate, non custodial accounts and refused to return them to LoanCare. As alleged, only the post-termination action, to move the funds into a separate account, could be considered an affirmative "distinct act of dominion" by Freedom. Therefore, the Court will dismiss Count Two, but allow LoanCare to proceed on Count Three.

**C.  *Unjust Enrichment (Count Five)***

In Count Five of the SAC, LoanCare alleges an alternative claim for unjust enrichment, "to the extent there is no contract governing this subject matter, or the Subservicing Agreement does not obligate Freedom to return the excess funds taken from LoanCare." SAC, at ¶121.  In response, Freedom argues that unjust enrichment claim must be dismissed because an express contract governed the relationship between the parties.  Indeed, "Virginia law is clear that a plaintiff cannot raise an unjust enrichment claim where an express contract governs the alleged wrongdoing."  Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd., 859 F. Supp. 2d 771, 781 (E.D. Va. 2012), aff'd, 505 F. App'x 242 (4th Cir. 2013).  However, "the Fourth Circuit expressly recognize[s] a plaintiff's ability to plead breach of contract and unjust enrichment claims alternatively." Hyundai Emigration Corp. v. Empower-Visa, Inc., 2009 WL 10687986, at *8 (E.D. Va. June 17, 2009)(citing Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp., 523 F.3d 266 (4th Cir. 2008)).  Therefore, at this stage of the litigation, the Court will allow LoanCare to proceed with its unjust enrichment claim in the alternative.

**IV. CONCLUSION**

For the foregoing reasons, Freedom's Motion to Dismiss will be **GRANTED IN PART**, as to Count Two from the SAC, but will be **DENIED IN PART**, as to Count One, Count Three, and Count Five from the SAC. An appropriate Order shall issue on this date.

**DATED:** September 23, 2019

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            UNITED STATES DISTRICT JUDGE