Robert J. Lack
Andrew M. Englander
FRIEDMAN KAPLAN SEILER
 & ADELMAN LLP
One Gateway Center, 25th Floor
Newark, NJ 07102-5311
(973) 877-6400

Stuart H. Singer, *pro hac vice*
Sabria A. McElroy, *pro hac vice*
Pascual A. Oliu, *pro hac vice*
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011

*Attorneys for Defendant-Counterclaimant LoanCare, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | |
|     Plaintiff-Counterclaim Defendant, | |
| v. | Civil Action No. 1:16-cv-02569-RMB-AMD |
| LOANCARE, LLC (as successor to FNF Servicing, Inc. and LoanCare, a Division of FNF Servicing, Inc.), | |
|     Defendant-Counterclaimant. | |
| _____/ | |

**LOANCARE'S POST-*DAUBERT* HEARING SUBMISSION**

3695985.1

LoanCare respectfully submits this memorandum to address two issues raised during the October 24–25, 2022 *Daubert* Hearing ("Hrg.").

**I.      Connally and Lyons Are Not Proper Summary Witnesses.**

The same problems the Court identified with Connally and Lyons' expert opinions would infect any attempt to use these experts' testimony, or their reports or spreadsheets, as summary evidence. "Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise inadmissible.'" *Eichorn v. AT&T Corp.*, 484 F.3d 644, 649–50 (3d Cir. 2007) (citation omitted). Any "summary" testimony by Connally or Lyons would leave the jury without any "tools" to assess the relevant contractual standard, *see, e.g.*, Hrg. Tr. 111, 193; would risk unfair prejudice or misleading the jury by suggesting that all loans on the list meet that standard, *see id*. 106 (discussing "[Rule] 403 balancing"); and would improperly flip the burden of proof and effectively require LoanCare to show that on each of the thousands of loans, Freedom has ***not*** overcome the "Limitation of Liability" in Subservicing Agreement ("SSA") § 8.3, *see* Hrg. Tr. 486 (discussing how this would shift the burden of proof). LoanCare negotiated Section 8.3 precisely to avoid treating Freedom as a "quasi-government agency" that could penalize LoanCare for not strictly complying with some audit-type checklist. *See* Hrg. Tr. 152, 185–86.

Moreover, this is not proper summary evidence. Where there are voluminous admissible documents that cannot be conveniently examined in court, Rule 1006 permits the use of a summary to prove their content. But Connally and Lyons' reports and loan spreadsheets do not simply compile admissible data; instead, they incorporate the judgment of each expert's respective teams. *See United States v. Shulick*, 18 F.4th 91, 106–07 (3d Cir. 2021) (rejecting summary that incorporated experienced witness's analysis, professional opinion, and judgment); *Eichorn*, 484 F.3d at 650 (rejecting summary that was "better described as a synthesis rather than a summary" that "included several assumptions, inferences, and projections"); *United States v.*

*Dish Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014) ("summary evidence must be a compilation of data without opinion").

For example, even the selection of which loans to include on any given spreadsheet necessarily involved opinions and analysis: the inclusion of any loan on a spreadsheet indicated the expert's judgment that the loan had a certain type of error, or insufficient documentation, or other opinions. *See, e.g.*, Hrg. Tr. 155 (including loans in appendix based on "opinion" that LoanCare failed to initiate timely foreclosure). Connally and Lyons also attempted to leave out loans where, based on their opinion and "expertise," Freedom's origination errors contributed to a loss. *See, e.g.*, D.E. 215-7, Lyons Dep. Tr. 266–67 (relying on team member's "expertise" to make this determination). The spreadsheets are rife with conclusions about how to calculate the length of a delay, or the resulting loss, or the supposed "pass-through damages," all of which are based on opinions, judgment, and analysis. *See, e.g.*, D.E. 215-12. Additionally, as Freedom admits, disagreements arose in preparing the spreadsheets, which were resolved using the judgment of the various team leads and experts. *See* D.E. 226, Freedom Opp. Br. at 9 & n.15.

## II.  LoanCare Is Not Vicariously Liable for Errors Caused by Foreclosure Attorneys and Property Preservation Vendors.

Under the SSA's high bar for liability, LoanCare is not vicariously liable for errors by attorneys or other vendors; instead, Freedom must prove that LoanCare's ***oversight*** of those third parties was grossly negligent, or otherwise meets the criteria for liability under Section 8.3. Mr. Sicuranza's analysis is consistent with this principle: in his review of loans with third-party delays, he considered whether LoanCare was complying with its third-party oversight duties by actively following up with vendors and attorneys and attempting to resolve delays. *See, e.g.*, Sicuranza Rpt., D-39, at 5; Hrg. Tr. 263. Even if foreclosure attorneys and property preservation vendors retained by LoanCare could be considered LoanCare's agents, the SSA, not agency law,

governs LoanCare's liability. "[P]arties may contract as they choose so long as what they agree to is not forbidden by law or against public policy," *Ulloa v. QSP, Inc.*, 271 Va. 72, 79–80 (2006). Here, Freedom agreed that LoanCare "does not guaranty Lender/Servicer the obligations or performance of any third party," SSA § 7.1(h), and that LoanCare would have liability "solely from its own acts or omissions," *id.* § 8.3.[1] Automatically imputing the acts and omissions of attorneys and vendors to LoanCare treats LoanCare as a "guarant[or]" of third-party performance rather than liable only for its own acts or omissions, contrary to the SSA.[2]

Even putting aside the SSA, the errors and omissions of foreclosure attorneys and vendors cannot be imputed to LoanCare under Virginia law because they are independent contractors. *See Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304–05 (2005). Moreover, under the SSA, both LoanCare and Freedom had authority to manage foreclosure attorneys, who were formally representing Freedom as the lender of record, and Freedom exercised this authority.[3] Similarly, Freedom exercised its authority over the work of property preservation vendors by, for example, requiring LoanCare to obtain its approval for certain types of preservation work.[4] Freedom's contention that delays by foreclosure attorneys and property preservation vendors should be attributed to LoanCare law ignores Freedom's own role in managing these parties.

---

[1] A "third party" is "[s]omeone who is not a party to a[n] . . . agreement[.]" *Third Party*, BLACK'S LAW DICTIONARY (11th ed. 2019); *Harroun v. Harroun*, 64 Va. Cir. 186 (2004). The SSA uses "third party" in this sense – for example, by referring to LoanCare's "tax service vendor" as a "third-party." SSA § 2.3(f), (g).

[2] If imputation were permissible, only willful misconduct or gross negligence of the attorneys would be relevant under Section 8.3. Hrg. Tr. 257, 264.

[3] *See* SSA § 8.6 (providing that foreclosure counsel shall be managed by LoanCare on behalf of Freedom unless Freedom "shall elect otherwise," and permitting Freedom to terminate foreclosure counsel for "reasonable cause"); *id.* § 2.5(d); D.E. 156-22 (Executed Statement of Work recognizing Freedom and LoanCare's shared responsibility for selection of foreclosure counsel and "[o]ngoing law firm performance management and compliance oversight"); D.E. 156-21; D.E. 132-12, Carrigan Dep. Tr. 60, 62–63, 65–66; D.E. 131-13, Brown Dep. Tr. 55–56.

[4] *See*, *e.g.*, D.E. 133-2, McLane Dep. Tr. 50–52.

Dated:  November 4, 2022

Respectfully submitted,

<u>s/ Robert J. Lack</u>
Robert J. Lack
Andrew M. Englander
FRIEDMAN KAPLAN SEILER
    & ADELMAN LLP
One Gateway Center, 25th Floor
Newark, NJ 07102-5311
(973) 877-6400

Stuart H. Singer, *pro hac vice*
Sabria A. McElroy, *pro hac vice*
Pascual A. Oliu, *pro hac vice*
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011

*Attorneys for Defendant-Counterclaimant LoanCare, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on November 4, 2022 via ECF on:

Jerry A. Cuomo, Esq.
Timothy J. Collazzi, Esq.
LANDMAN, CORSI, BALLAINE & FORD P.C.,
One Gateway Center, Suite 400
Newark, NJ 07102
jcuomo@lcbf.com
tcollazzi@lcbf.com

*Attorneys for Plaintiff-Counterclaim Defendant Freedom Mortgage Corporation*

<u>s/ Robert J. Lack</u>
Robert J. Lack

4

3695985.1