# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | |
| Plaintiff-Counterclaim Defendant, | Civil No. 16-02569 (RMB/AMD) |
| v. | **MEMORANDUM ORDER** |
| LOANCARE, LLC (as successor to FNF Servicing, Inc. and LoanCare, a Division of FNF Servicing, Inc.), | |
| Defendant-Counterclaimant. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court on the parties' pretrial briefs that raise questions over which states' punitive damages law applies to Defendant-Counterclaimant LoanCare, LLC's (LoanCare) punitive damages claim against Plaintiff Freedom Mortgage Corporation (Freedom). This Court resolves this choice-of-law question now to prevent any delay of the impending trial.

Choice-of-law questions often have outcome-determinative answers, like precluding certain claims or limiting the relief a party may obtain. The parties here battle over whether Virginia's or New Jersey's punitive damages law applies to LoanCare's punitive damages claim against Freedom on certain tort claims. Both states' laws conflict: Virginia caps a punitive damages award at $350,000, Va. Code Ann. § 8.01-38.1, while New Jersey does not, allowing a punitive damages award of $350,000 or five-times the amount of a compensatory damages award, "whichever is greater," N.J. Stat. Ann. § 2A:15-5.14(b). Assuming LoanCare prevails on its tort and punitive damages claims, this Court must decide which

state's punitive damages law cap applies – a decision that will ultimately affect LoanCare's pockets.

For the below reasons, this Court finds New Jersey has the most significant relationship to LoanCare's punitive damages claim, and so, New Jersey punitive damages law will apply.

## BACKGROUND

The parties are all too familiar with the facts of this dispute, and the Court recites only those facts necessary to resolve this choice-of-law question. In essence, LoanCare's tort and punitive damages claims against Freedom flow from the below facts.

For over a decade, LoanCare serviced many loans for Freedom based on a loan servicing agreement between them. When the parties' relationship soured, they decided to end it. According to LoanCare, Freedom requested LoanCare to return money in certain custodial accounts for loans that LoanCare serviced. LoanCare began wiring funds from those accounts to Freedom. At the same time, Freedom allegedly secretly blocked LoanCare's access to those accounts while also withdrawing money from them. According to LoanCare, Freedom instructed the bank to prevent LoanCare from withdrawing funds from the accounts but to allow Freedom to make withdrawals. Freedom moved the money in the custodial accounts to its own accounts "without [LoanCare's] knowledge." [LoanCare Trial Br. 3 (record citation omitted) (Docket No. 302).] Because Freedom blocked LoanCare's access to the custodial accounts and allegedly emptied them out, the bank could not fund the wire transfers from them. Instead, the bank used LoanCare's personal accounts to pay the wire transfers to Freedom. Ultimately, Freedom received over $111 million through multiple transactions. After learning it was duped, LoanCare demanded the return

2

of its money.  Freedom returned most of the money but is still holding over $22 million – money LoanCare claims belongs to it.

## DISCUSSION

In a diversity action, a federal court applies the choice-of-law rules of the forum state to determine what law governs the substantive issues in a case.  *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).  Since this diversity action started in New Jersey, this Court looks to New Jersey's choice-of-law rules.  *Id.*

In New Jersey, the first step to resolve a choice-of-law question turns on "whether the laws of the states with interests in the litigation are in conflict."  *In re Accutane Litig.*, 194 A.3d 503, 517 (N.J. 2018) (quoting *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 216 (N.J. 2017)).  A conflict exists if "there is a distinction" between the competing state laws that would be outcome determinative.  *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)); *see also Accutane*, 194 A.3d at 517.  If no conflict exists, "then there is no choice-of-law issue to be resolved . . . and the forum state applies its own law."  *Accutane*, 194 A.3d at 517 (citations and internal quotation marks omitted).

New Jersey courts make choice-of-law decisions on an "issue-by-issue basis," *Camp Jaycee*, 962 A.2d at 460, and "the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another," *Irby v. Novartis Pharm. Corp.*, 2011 WL 5835414, at *3 (N.J. Super. Ct. Law Div. Nov. 18, 2011) (quoting *Grossman v. Club Med Sales, Inc.*, 640 A.2d 1194, 1199 (N.J. Super. Ct. App. Div. 1994)).  This principle, called *depecage*, allows New Jersey courts to apply different state laws to different issues in a case.  *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 447 (D.N.J. 1998); *see also Knipe v. SmithKline Beecham*, 583 F.

3

Supp.2d 602, 637 (E.D. Pa. 2008) ("[C]ourts have long recognized that they are not bound to decide all issues under the local law of a single state[], but instead each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." (quoting Restatement (Second) of Conflict of Laws § 145 cmt. d)). New Jersey courts often invoke *depecage* in cases involving punitive damages. *Irby*, 2011 WL 5835414, at *3; *see also Meng v. Novartis Pharm. Corp.*, 2009 WL 4623715, at *2 (N.J. Sup. Ct. Law Div. Nov. 23, 2009). This is so because "[w]hether a party is entitled to punitive damages is distinct from the choice of law question related to liability and must be analyzed separately." *Heartland Payment Sys., LLC v. Carr,* 2020 WL 13580941, at *3 (D.N.J. Dec. 28, 2020).

Here, all agree Virginia's and New Jersey's punitive damages laws conflict. Virginia caps a punitive damages award at $350,000 while New Jersey does not. *Compare* Va. Code Ann. § 8.01-38.1 *with* N.J. Stat. Ann. § 2A:15-5.14(b). LoanCare seeks over $22 million in compensatory damages on its tort claims against Freedom. [LoanCare's Second Am. Countercl. ¶¶ 98, 103, 113 (Docket No. 90).] If LoanCare prevails on its tort and punitive damages claims against Freedom at trial and depending on any compensatory damages award in LoanCare's favor, LoanCare could recover millions in punitive damages if New Jersey's punitive damages law applies. That is outcome determinative. *Irby*, 2011 WL 5835414, at *3 (finding actual conflict between Virginia's and New Jersey's punitive damages laws).

Because there is an actual conflict, this Court must now determine which state has the most significant relationship to the punitive damages claim. *Accutane*, 194 A.3d at 521-22. To do so, this Court must apply the Restatement (Second) of Conflict of Laws and examine both the Restatement's "general principles for tort actions" and "overarching choice-of-law

principles." *Id.* at 521. Section 145 of the Restatement houses the general principles for tort actions, and requires courts to examine:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2)(a). Courts must examine the above contacts "according to their relative importance with respect to the particular issue." *Id.* But this inquiry is not a numbers game. *Camp Jaycee*, 962 A.2d at 460 ("The inquiry does not focus solely on the number of contacts with each state, although that can be persuasive.") Rather, the focus is "qualitative." *Id.* Further, this Court must measure Section 145's contacts against the Restatement's predominant choice-of-law principles under Restatement § 6 to determine which state has the most significant relationship to the punitive damages claim. *Id.* Those factors, "[r]educed to their essence," are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Id.* at 463 (quoting *Erny v. Estate of Merola*, 792 A.2d 1208, 1217 (N.J. 2002)); *see also* Restatement, *supra*, § 6.

With these principles in mind, this Court first looks to Section 145's contacts. Here, Virginia is the place of injury and LoanCare has acknowledged as much. [LoanCare's Mem. of Law in Supp. of Partial Summ. J. 14 n. 4 (stating in connection with its conversion claim that "the injury occurred to LoanCare, in Virginia") (Docket No. 52-2).] Generally, in cases involving personal injury or property torts, the law of the place of injury presumptively governs. *Accutane*, 194 A.3d at 520; *see also* Restatement, *supra*, §§ 146-47. Thus, Virginia law

5

would presumptively govern LoanCare's punitive damages claim. *McCarrell*, 153 A.3d at 219-220. But that presumption may be overcome if New Jersey has a more significant relationship to LoanCare's punitive damages claim. *Accutane*, 194 A.3d at 520.

As noted, courts evaluate Restatement § 145's contacts "according to their relative importance with respect to the particular issue." Restatement, *supra*, § 145(2)(a). Because the "particular issue" here is punitive damages, "the place where the conduct occurred has peculiar significance." *Id.* § 145 cmt. e. Indeed, if the tort rule's primary purpose "is to deter or punish misconduct" – the crux of punitive damages – "the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." *Id.* § 145 cmt. c. Thus, when punitive damages are at play, "the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located." *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 938 (D.D.C. 1984) (citing Restatement (Second) of Conflict of Laws § 145 cmts. c-e)); *see also Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996) (finding the "most critical contacts [for a punitive damages choice-of-law analysis] include the place where the alleged punitive conduct occurred and, if dealing with a corporate defendant, the state of incorporation and its principal place of business").

Here, LoanCare argues (and points to some evidence suggesting) Freedom's alleged tortious conduct occurred in New Jersey where Freedom is incorporated and has its principal place of business. [LoanCare's Trial Br. 2-5, 9; see also LoanCare's Second Am. Countercl. ¶ 7.] LoanCare contends Freedom's conduct – requesting LoanCare to wire the funds from the custodial accounts, then secretly blocking LoanCare's access to the accounts and taking money from them without LoanCare's knowledge, and refusing to return millions of

LoanCare's money – all occurred in New Jersey.  Freedom does not dispute that its actions occurred in New Jersey.  [Freedom Trial Br. 28 (arguing that New Jersey law would apply to one factor under Restatement § 148's choice-of-law factors for fraudulent misrepresentation claims that look to "the state where the defendant made the alleged representations") (Docket No. 300).]

Many courts have found the state where the company's managerial decisions that form the basis of a party's punitive damages claim is the place where the conduct causing the injury occurred.  *Irby,* 2011 WL 5835414, at *5 (holding where plaintiff sought punitive damages for defendant's marketing, distributing, and selling of certain pharmaceutical, the state's law where defendant engaged in those business activities would apply); *Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 (W.D. Tenn. 2006) (ruling where plaintiff sought punitive damages for vehicle's defective design, manufacture, construction, and assembly, the state's law where defendant designed the vehicle and "the corporate decisions" on the design, manufacture, distribution, and marketing of the vehicle would apply); *Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1528-29 (S.D.N.Y. 1986) (finding Pennsylvania to be "the place where the conduct causing the injury occurred" because the corporate decisions and actions prompting the accident occurred there).  Because LoanCare's punitive damages claim focuses on Freedom's corporate actions and decisions made in New Jersey (which Freedom apparently does not dispute on the location), New Jersey is the location of the conduct causing LoanCare's alleged injury.

The remaining Restatement § 145 contacts cut either way because LoanCare is domiciled and has its principal place of business in Virginia, and the parties' relationship could be considered centered in either Virginia or New Jersey given their locations, the length

of their relationship, and their written agreement to apply Virginia law to govern their contractual relationship.[1] [LoanCare's Am. Second Countercl. ¶ 8; LoanCare's SJ Motion 14 n.4.] In any event, those contacts deserve less weight here. *Kelly*, 933 F. Supp. at 469 (noting "jurisdictions have held that when punitive damages are the subject of a conflict of laws, the domicile or residence of the plaintiff and the place where the injury occurred are not relevant contacts"); *see also Raidair, LLC v. Alaska Airlines, Inc.*, 2022 WL 193736, at *5 & n.9 (W.D. Tenn. Jan. 20, 2022) (collecting cases and observing "numerous courts have found a plaintiff's domicile irrelevant to a choice of law analysis focused on punitive damages").

Since the location of the wrongdoer's conduct, principal place of business, and incorporation state are "critical contacts" for a punitive damages choice-of-law inquiry, *see Kelly*, 933 F. Supp. at 469, and because those contacts point to New Jersey here, New Jersey has the most significant relationship to LoanCare's punitive damages claim. The Restatement's "overarching choice-of-law principles" under Restatement § 6 confirm that finding. *Accutane*, 194 A.3d at 521.

*First*, the "interests of interstate comity" and the "competing interests" of New Jersey and Virginia support applying New Jersey's punitive damages law. *Camp Jaycee*, 962 A.2d at 466 (noting the "interests of interstate comity" factor examines whether applying a "competing state's law would frustrate the policies of other interested states" (quoting *Fu v.*

---

[1] This Court gives the parties' agreed-on choice-of-law contract provision less weight to the punitive damages issue because: (1) LoanCare's tort claims – the basis for its punitive damages claim – arose when the parties were winding up their contractual relationship; and (2) the parties' agreement's choice-of-law provision providing that Virginia law "shall govern[] . . . [t]his agreement" is not broad enough to encompass LoanCare's tort and punitive damages claims. *Jiffy Lube Intern., Inc. v. Jiffy Lube of Pa.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994) (explaining "[c]ontractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship," and ruling nearly identical choice-of-law provision only governed the construction, interpretation, and enforcement of the agreement, but not defendants/third-party plaintiffs' tort claims).

*Fu*, 733 A.2d 1133, 1141 (N.J. 1999))). New Jersey's and Virginia's policies for their punitive damages laws "differ substantially." *Irby*, 2011 WL 5835414, at *6. New Jersey's punitive damages law is conduct-regulating since the law's purpose is "to punish the defendant and to deter that defendant from repeating such conduct." N.J. Stat. Ann. § 2A:15-5.14(a); *see also Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 916 A.2d 484, 488 (N.J. Super. Ct. App. Div. 2007) (finding New Jersey "has a legitimate interest 'in punishing unlawful conduct and deterring its repetition'" (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996))), *aff'd*, 943 A.2d 866 (N.J. 2008). Virginia's punitive damages law, on the other hand, is "an economic regulation" aimed "to limit juries' punitive damages awards to those that punish and deter and to prevent awards that burden the state's economy." *Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Prot. Sys., Inc.*, 979 F.2d 980, 985 (4th Cir. 1992) (examining Va. Code Ann. § 8.01-38.1).

Applying Virginia's punitive damages law here does not serve the law's purpose since Freedom is not a Virginia citizen, and so, a punitive damages award above $350,000 will not burden Virginia's economy. And Virginia does not have a strong interest in punishing conduct that occurred in another state. *See Brown v. Novartis Pharm.*, 2012 WL 3066588, at *8 (E.D.N.C. July 27, 2012) (holding the Restatement factors supported applying New Jersey's punitive damages law because, among other reasons, "North Carolina does not have as great an interest in punishing conduct that occurred in another state"). But New Jersey does and applying New Jersey's punitive damages law serves the state's goal of punishing wrongful conduct within its borders. *Irby*, 2011 WL 5835414, at *7-9.

*Second*, the parties' interests and the "interests underlying the field of tort law" favor applying New Jersey's punitive damages law. *Camp Jaycee*, 962 A.2d at 463. The parties'

9

interests factor examines the parties' "justified expectations" and the interests of tort law factor looks to the "degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's local law." *Fu*, 733 A.2d at 1141. While the parties' interests factor is generally inapplicable to unintentional torts such as negligence, *see Accutane*, 194 A.3d at 523, some courts find that this factor supports applying New Jersey's punitive damages law against a New Jersey citizen, especially where the conduct occurred here, *see Irby*, 2011 WL 5835414, at *7 (finding defendant "should reasonably expect to be governed by and punished under the punitive damage laws of the state in which it maintains its principal place of business"). *See also Brown*, 2012 WL 3066588, at *8 (ruling "[d]efendant has a justified expectation to have New Jersey law determine whether its conduct in that state warrants punishment"). Next, the "interests underlying the field of tort law" support applying New Jersey's punitive damages law here because punishing and deterring wrongful conduct is "what punitive damages are all about." *Almog v. Israel Travel Advisory Serv., Inc.*, 689 A.2d 158, 165 (N.J. Super. Ct. App. Div. 1997); *see also Irby*, 2011 WL 5835414, at *7 (finding this factor supported applying New Jersey's punitive damages law because if defendant committed willful corporate misconduct in New Jersey, "then New Jersey should punish [d]efendant to prevent such conduct in the future"). Virginia's interest here would be served by applying its laws on tort liability and compensatory damages to LoanCare's tort claims because Virginia is the place of injury. *Irby*, 2011 WL 5835414, at *7. And LoanCare agrees those aspects of Virginia law apply. [LoanCare Trial Br. 10.]

And *third*, the interests of judicial administration – which requires courts to examine "practicality and ease of application, factors that in turn further the values of uniformity and

predictability," *Camp Jaycee*, 962 A.2d at 467 – also support applying New Jersey's punitive damages law. A New Jersey court applying New Jersey law on punitive damages against a New Jersey company for conduct in this state is in the best interest of judicial administration. *Irby*, 2011 WL 5835414, at *7 (finding this factor supported applying New Jersey's punitive damages law over Virginia's law). Indeed, since New Jersey has a strong interest in regulating its citizens' wrongful conduct within this state, New Jersey "is best-suited to determine when such conduct warrants punitive damages." *Brown*, 2012 WL 3066588, at *8.

Freedom's arguments that Virginia's punitive damages law applies are unpersuasive because Freedom overlooks fundamental New Jersey choice-of-law rules. [Freedom Trial Br. 24-29.]

For starters, Freedom ignores that New Jersey courts make choice-of-law decisions on an issue-by-issue basis and this state's choice-of-law rules include *depecage*. *Camp Jaycee*, 962 A.2d at 460; *Parlodel Litig.*, 182 F.R.D. at 447. As noted, New Jersey courts often apply *depecage* to punitive damages claims. *Irby*, 2011 WL 5835414, at *3; *Meng,* 2009 WL 4623715, at *2. Despite Freedom's contrary claims, New Jersey courts have applied different state laws to determine tort liability, compensatory damages, and punitive damages in the same case. *See Irby*, 2011 WL 5835414, at *3 (observing that *Meng* applied New Jersey law on punitive damages "even though Maine and Mississippi law governed the liability issues"); *see also Clawans v. U.S.*, 75 F. Supp. 2d 368, 374-75 (D.N.J. 1999) (applying New Jersey law on noneconomic damages but Maryland law on apportionment of fault).

Next, Freedom misreads the Third Circuit's decision in *Draper v. Arico, Inc.*, 580 F.2d 91 (3d Cir. 1978) and the Restatement when arguing New Jersey's choice-of-law rules require courts to apply the damages law of the state whose substantive law applies – so here, Virginia.

11

[Freedom Trial Br. 26.]. *Draper* did not involve a punitive damages claim, 580 F.2d at 97-98, which must be "analyzed separately" from choice-of-law questions on liability and compensatory damages, *see Heartland*, 2020 WL 13580941, at *3. And Freedom misconstrues the Restatement's provision it relies on. Indeed, the Restatement provision that Freedom points to instructs that the law selected under Restatement § 145 determines the law on exemplary damages, Restatement, *supra*, § 171 cmt. d, which this Court already found is New Jersey. The Restatement then explains:

> The law governing the right to exemplary damages need not necessarily be the same as the law governing the measure of compensatory damages. This is because situations may arise where one state has the dominant interest with respect to the issue of compensatory damages and another state has the dominant interest with respect to the issue of exemplary damages.

*Id.* § 171 reporter note, cmt. d. New Jersey's choice-of-law rules follow that approach by applying different state laws on tort liability, compensatory damages, and punitive damages depending on which state has the most significant relationship to those issues when there is a conflict between the laws. *Irby*, 2011 WL 5835414, at *10. And as explained above, New Jersey has a greater interest in LoanCare's punitive damages claim even though Virginia has an interest in having its tort laws on liability and compensatory damages apply to LoanCare's tort claims because all agree Virginia is the place of injury. Thus, Freedom's contrary arguments are unavailing.

Having considered the relevant Restatement factors required by New Jersey's choice-of-law rules, this Court finds New Jersey has the most significant relationship to LoanCare's punitive damages claim. Thus, New Jersey punitive damages law will apply.

## CONCLUSION

For the above reasons, and for good cause shown,

IT IS on this **6th** day of **July 2023**, hereby:

**ORDERED** that New Jersey's punitive damages law will apply to Defendant-Counterclaimant LoanCare, LLC's punitive damages claim against Plaintiff Freedom Mortgage Corporation.