## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | CIVIL ACTION NO.: 1:16-cv-02569 (RMB-AMD) |
| Plaintiff/Counterclaim Defendant, | Motion Day:  November 20, 2023 |
| v. | |
| LOANCARE, LLC (as successor to FNF Servicing, Inc. and LoanCare, a Division of FNF Servicing, Inc.), | |
| Defendant/Counterclaim Plaintiff. | |

---

### FREEDOM MORTGAGE CORPORATION'S
### OPPOSITION TO LOANCARE, LLC'S MOTION
### FOR ATTORNEYS' FEES AND EXPENSES

---

LANDMAN CORSI BALLAINE &
FORD, P.C.
One Gateway Center, 22nd Floor
Newark, NJ 07102

DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
1940 Route 70 East
Suite 100
Cherry Hill, NJ 08003-2171

*Attorneys for Plaintiff/Counterclaim Defendant Freedom Mortgage Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

GLOSSARY OF TERMS ................................................................... xii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ....................................................................................2

I.    New Jersey Law Governs LC's Motion. .........................................2

II.    LC is Foreclosed from Seeking Attorneys' Fees and Expenses.....................4

    A.    LC Cannot Obtain Post-Trial Contractual Attorneys' Fees and Expenses Under Rule 54(d)(2)..............................................4

    B.    LC Has Waived Its Right to Obtain Contractual Attorneys' Fees and Expenses Because It Failed to Plead Them.....................................6

III.    LC is Not Entitled To Fees and Expenses under the SSA............................11

IV.    LC's Requested Attorneys' Fees Are Unreasonable. ...................................16

    A.    LC Fails to Establish the Reasonableness of the Requested Rates. .................................................................................17

    B.    LC Fails to Establish the Reasonableness of Its Requested Hours. ................................................................................23

    C.    The Lodestar Amount Should Be Further Reduced Due to LC's Limited Success and Recovery. .........................................................27

V.    LC's Other Requested Fees, Costs, and Expenses Are Unrecoverable. ........30

CONCLUSION ....................................................................................40

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995) ..........................................32

*Access 4 All, Inc. v. Boardwalk Regency Corp.*,
   2012 WL 3627775 (D.N.J. 2012) ..............................................................*Passim*

*Adwalls Media, LLC v. Adwalls, LLC*,
   2013 WL 375212 (D.N.J. 2013) ........................................................5–6, 30

*Amerisource Corp. v. Rx USA Int'l Inc.*,
   2010 WL 2160017 (E.D.N.Y. 2010) ................................................36

*Ams. for Prosperity v. Grewal*, 2021 WL 1153194 (D.N.J. 2021).........................20

*Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*,
   705 F.2d 712 (4th Cir. 1983) ...............................................................7

*Avaya Inc. v. Telecom Labs, Inc.*, 2016 WL 10590071 (D.N.J. 2016)...................22

*Belfer v. Merling*, 730 A.2d 434 (N.J. Super. Ct. App. Div. 1999)....................4, 14

*Bellerive v. EOR Inc.*, 3 Wash. App. 2d 1016,
   2018 WL 1729776 (2018)....................................................................15

*Bilazzo v. Portfolio Recov. Assoc., LLC*,
   876 F. Supp. 2d 452 (D.N.J. 2012) ...........................................27, 38

*Boles v. Wal-Mart Stores, Inc.*, 2015 WL 4653233 (D.N.J. 2015) .................23, 26

*Bornstein v. Cnty. of Monmouth*, 2015 WL 2125701 (D.N.J. 2015).........................9

*Buccinna v. Miceletti*, 710 A.2d 1019 (N.J. Super. Ct. App. Div. 1998) ...............32

*Buying for the Home, LLC v. Humble Abode, LLC*,
   2006 WL 8458811 (D.N.J. 2006) .......................................................8

*C.H. ex rel. M.H. v. Jefferson Twp. Bd. of Educ.*,
   2005 WL 4122172 (D.N.J. 2005) .......................................................33

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
  673 F. App'x 141 (3d Cir. 2016) ....................................................................35

*Caplan v. Premium Receivables LLC*,
  2015 WL 4566982 (W.D. Pa. 2015)..............................................................27

*Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*,
  2016 WL 231018 (D.N.J. 2016) .......................................................................7

*Chin v. Chrysler LLC*, 538 F.3d 272 (3d Cir. 2008)..............................................2–3

*Churchill v. Star Enters.*, 183 F.3d 184 (3d Cir. 1999) ..........................................10

*City of Atl. City v. Zemurray St. Cap., LLC*,
  2022 WL 92802 (D.N.J. 2022) .........................................................18, 20, 40

*Coady v. Strategic Res., Inc.*, 515 S.E.2d 273 (Va. 1999).....................................15

*Columbia Pictures Indus., Inc. v. Adent*,
  1992 WL 188420 (N.D. Ill. 1992) ...................................................................26

*Connelly v. Blot*, 2017 WL 11501501 (E.D. Va. 2017).............................................5

*Connor v. Sedgwick Claims Mgmt. Servs., Inc.*,
  2012 WL 6595072 (D.N.J. 2012) ..............................................................18, 21

*Cook Children's Med. Ctr. v. New Eng. PPO Plan of Gen. Conso.
  Mgmt., Inc.*, 491 F.3d 266 (5th Cir. 2007).....................................................31

*Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*,
  2020 WL 1557492 (E.D. Tex. Apr. 1, 2020)....................................................38

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999)...................10

*Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437 (1987) ............................30

*Credit One Bank, N.A. v. Lieberman*,
  2023 WL 4014471 (3d Cir. 2023) .....................................................................3

*Culley v. Liberty Life Assurance Co. of Bos.*,
  2010 WL 11693023 (D.N.J. 2010)..............................................................31, 33

*Cunningham v. Fin. Modeling Concepts, Inc.*,
  2006 WL 2986616 (N.J. Super. Ct. App. Div. 2006)..........................................4

*Cypress Drilling, Inc. v. Griffin*, 2010 WL 11691487 (W.D. La. 2010)................30

*D'Ottavio v. Slack Techs.*, 2022 WL 17976822 (D.N.J. 2022) ...............................22

*Dare v. Freefall Adventures, Inc.*,
    793 A.2d 125 (N.J. Super. Ct. App. Div. 2002) ....................................................4

*Delaney v. Enter. Rent-A-Car Co.*,
    2006 WL 1194274 (N.J. Super. Ct. App. Div. 2006)..........................................28

*Denesha v. Farmers Ins. Exch.*, 976 F. Supp. 1276 (W.D. Mo. 1997) ..................36

*Depomed, Inc. v. Actavis Elizabeth LLC*,
    2018 WL 999673 (D.N.J. 2018) .................................................................37–38

*Dessert Beauty, Inc. v. Platinum Funding Corp.*,
    519 F. Supp. 2d 410 (S.D.N.Y. 2007) ................................................................16

*E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*,
    2016 WL 1367176 (M.D. Pa. 2016) .....................................................................7

*E.E.O.C. v. United Parcel Serv.*, 2009 WL 3241550 (D.N.J. 2009) ......................40

*EQT Prod. Co. v. Terra Servs., LLC*,
    2018 WL 658871 (W.D. Pa. 2018)......................................................................12

*In re Est. of Reisen*, 713 A.2d 576 (N.J. Super. Ct. Ch. Div. 1998)......................39

*In re Est. of Vayda*, 2006 WL 3511351
    (N.J. Super. Ct. App. Div. 2006) .........................................................................29

*Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346 (3d Cir. 2001) ..........................23

*Exxess Electronixx v. Heger Realty Corp.*,
    75 Cal. Rptr. 2d 376 (Ct. App. 1998) .................................................................15

*Faragalla v. Otundo*, 626 F. Supp. 3d 783 (D.N.J. 2022).......................................21

*Flying R Aviation, LLC v. Bondio, LLC*,
    2023 WL 4826217 (N.D. Tex. 2023) ..................................................................26

*Freedom Mortg. Corp. v. LoanCare, LLC*,
    2023 WL 4759162 (D.N.J. 2023) .........................................................................9

*FTC v. Circa Direct LLC*,
  912 F. Supp. 2d 165 (D.N.J. 2012) ..........................................................17–18, 25

*Gerling v. Waite*, 2022 WL 558083 (E.D. Mo. 2022) .............................................25

*Goldstine v. FedEx Freight Inc.*,
  2021 WL 952325 (W.D. Wash. 2021) ..........................................................25, 36

*Google Inc. v. Beneficial Innovations, Inc.*,
  2014 WL 4227366 (E.D. Tex. 2014) ..............................................................31–32

*Graham v. Cmty. Mgmt. Corp.*, 805 S.E.2d 240 (Va. 2017) .....................................5

*Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443 (E.D. Pa. 2014) .........................27

*Hahnemann Univ. Hosp. v. All Shore, Inc.*,
  514 F.3d 300 (3d Cir. 2008) .........................................................................24, 39

*Hammock v. Wal-Mart Stores, Inc.*,
  2013 WL 11897800 (N.D. Ga. 2013) ...................................................................8

*Hansen Found., Inc. v. City of Atl. City*,
  2021 WL 3674354 (D.N.J. 2021) ...........................................................*Passim*

*Hansen v. Rite Aid Corp.*, 290 A.3d 159 (N.J. 2023) ....................................*Passim*

*Helman v. Marriott Int'l, Inc.*, 2021 WL 3473480 (D.V.I. 2021) ...........................15

*High Crest Functional Med. LLC v. Horizon Blue Cross Blue Shield
  of N.J., Inc.*, 2019 WL 4099710 (D.N.J. 2019) ....................................................6

*Hodges v. Corizon Health, Inc.*, 2020 WL 3717076 (D. Or. 2020) .......................40

*Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272 (3d Cir. 2016) ..................................10

*Houser v. Pa. Dep't of Corr.*, 2022 WL 5434311 (3d Cir. 2022) .............................9

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
  2011 WL 2293334 (D.N.J. 2011) ................................................................25, 34

*Innes v. Innes*, 569 A.2d 770 (N.J. 1990) ..............................................................15

*Ins. Restoration Specialists, Inc. v. 26 Kennedy Blvd. Assocs., Ltd.*,
  2016 WL 1418113 (N.J. Super. Ct. App. Div. 2016).........................................29

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005) ..............................................................17–18, 23, 32

*Intervet, Inc. v. Mileutis, Ltd.*, 2016 WL 740267 (D.N.J. 2016) .............................15

*Jamy Enters., LLC v. E & S Food Serv. Corp.*,
    2009 WL 3271482 (D.N.J. 2009) .....................................................................3–5

*In re Johnson & Johnson Derivative Litig.*,
    2013 WL 11228425 (D.N.J. 2013) ................................................24–25, 27, 34

*Josantocs Const. v. Bohrer*, 740 A.2d 653 (N.J. Super. Ct. App. 1999) ................32

*K.N. v. Gloucester City Bd. of Educ.*, 2022 WL 613846 (D.N.J. 2022)............18–19

*K7 Design Grp., Inc. v. Five Below, Inc.*,
    2023 WL 4108837 (E.D. Pa. 2023) ...................................................................38

*KCG Holdings, Inc. v. Khandeker*,
    2020 WL 7053229 (S.D.N.Y. 2020)...................................................................16

*Key Bank Nat'l Ass'n v. Van Noy*, 598 F. Supp. 2d 1160 (D. Or. 2009)................40

*Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*,
    446 F. Supp. 2d 551 (E.D. Va. 2006) ..................................................................6

*Kuhar v. Petzl Co.*, 2022 WL 1101580 (3d Cir. 2022)...........................................21

*Kumon N. Am., Inc. v. Timban*, 2014 WL 2932653 (D.N.J. 2014) .........................21

*Leafty v. Aussie Sonoran Cap. LLC*, 2017 WL 588717 (D. Ariz. 2017)...................7

*Levin v. Five Corners Strategies, LLC*,
    541 F. Supp. 3d 1262 (D. Colo. 2021)................................................................8

*Lifespan Corp. v. New Eng. Med. Ctr., Inc.*,
    2011 WL 3841085 (D.R.I. 2011)..........................................................................6

*Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420 (N.J. 2009) .........................16

*LoanCare, LLC v. Freedom Mortgage Corp.*,
    No. 3:16-cv-612-TJC-MCR (M.D. Fla.) .......................................................26–27

*In re LTL Mgmt. LLC*, No. 21-30589-MBK (Bankr. D.N.J. 2022) .........................22

*Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175 (D.N.J. 2015)...................22

*Lynch v. Sease*, 2006 WL 1206472 (E.D. Ky. 2006)..................................6

*Maidmore Realty Co. v. Maidmore Realty Co.*,
    474 F.2d 840 (3d Cir. 1973) ................................................7

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am. Inc.*,
    975 A.2d 510 (N.J. Super. Ct. App. Div. 2009) ..........................32

*Mallon v. Hudson Sav. Bank*,
    2019 WL 3297393 (N.J. Super. Ct. App. Div. 2019)...................25, 36

*Marina Del Rey Assocs., LLC v. Cmty. Realty Mgmt., Inc.*,
    2016 WL 4197303 (N.J. Super. Ct. App. Div. 2016)..........................5

*McCann v. Whitehall Manor Condo. Ass'n, Inc.*,
    2021 WL 5505168 (N.J. Super. Ct. App. Div. 2021)........................15

*McGuire v. City of Jersey City*, 593 A.2d 309 (N.J. 1991) .......................3

*Merck Sharp & Dohme Pharms., SRL v. Teva Pharms. USA, Inc.*,
    2010 WL 1381413 (D.N.J. 2010) .........................................37

*Merrill Lynch, Pierce, Fenner & Smith Inc v. Schwarzwaelder*,
    2013 WL 1181569 (W.D. Pa. 2013).........................................7

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
    224 F.R.D. 595 (D.N.J. 2004)........................................25, 33

*Mumford v. GNC Franchising LLC*,
    2007 WL 3003798 (W.D. Pa. 2007).........................................7

*myCUmortgage, LLC v. Cenlar FSB*,
    2019 WL 1397140 (S.D. Ohio 2019) ......................................16

*Mylan Inc. v. SmithKline Beecham Corp.*,
    2015 WL 1931139 (D.N.J. 2015) .........................................38

*N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,
    730 A.2d 843 (N.J. 1999) ................................................3

*N.J. Bankers Ass'n v. Platkin*, 2023 WL 5623940 (D.N.J. 2023) ...............24–25

*N.J. Primary Care Ass'n v. State Dep't of Human Servs.*,
  2013 WL 3288082 (D.N.J. 2013) .......................................................24

*New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*,
  212 F. Supp. 2d 763 (S.D. Ohio 2002) ...............................................12

*In re NJ Affordable Homes Corp.*,
  2013 WL 6048836 (Bankr. D.N.J. 2013) ..............................................8

*NXIVM Corp. v. Sutton*,
  2019 WL 4010859 (D.N.J. 2019) .......................................................22

*Online Resources Corp. v. Lawlor*, 736 S.E.2d 886 (Va. 2013) ...............................5

*Orion Drilling Co., LLC v. EQT Prod. Co.*,
  2019 WL 426738 (W.D. Pa. 2019) .....................................................32

*Otsuka Pharm. Co. v. Sandoz*, Inc., 2015 WL 5921049 (D.N.J. 2015)...................35

*Ownbey v. Aker Kvaerner Pharms., Inc.*,
  2023 WL 4447014 (D.N.J. 2023) ....................................................24, 29, 38–39

*P.J. by & through W.J. v. Conn. State Bd. of Educ.*,
  931 F.3d 156 (2d Cir. 2019) ..............................................................26

*Pearce v. Emmi*, 2020 WL 2188787 (E.D. Mich. 2020) ...................................36–37

*In re Pelican Pool & Ski Ctr., Inc.*, 2009 WL 2244573 (D.N.J. 2009) ...................14

*People v. Arias*, 195 P.3d 103 (Cal. 2008) .............................................12

*Perri v. Resorts Int'l Hotel, Inc.*, 2014 WL 201520 (D.N.J. 2014) .......................33

*Perry v. Serenity Behav. Health Sys.*,
  2009 WL 1259367 (S.D. Ga. 2009)......................................................8

*Pirl v. Ringling*, 2023 WL 2435443 (W.D. Pa. 2023) ............................................38

*Port Drivers Fed'n 18, Inc. v. All Saints*,
  2011 WL 3610100 (D.N.J. 2011) .......................................................24

*Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500 (3d Cir. 2012)...........................12

*Pretlow v. Cumberland Cnty. Bd. of Soc. Servs.*,
  2005 WL 3500028 (D.N.J. 2005) ...........................................................18, 24, 39

*In re Processed Egg Prod. Antitrust Litig.*,
  610 F. Supp. 3d 697 (E.D. Pa. 2022) ..................................................................38

*Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*,
  2016 WL 1559144 (D.N.J. 2016) ........................................................................37

*R.M. v. Sup. Ct. of N.J.*, 918 A.2d 7 (N.J. 2007) ....................................................16

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  674 F.3d 158 (3d Cir. 2012) ........................................................................35, 37

*Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*,
  510 A.2d 1152 (N.J. 1986) .................................................................................3

*Reed Auto of Overland Park, LLC v. Landers McLarty Olathe KS,
  LLC*, 2022 WL 392302 (D. Kan. 2022).........................................................10–11

*Rendine v. Pantzer*, 661 A.2d 1202 (N.J. 1995) ...............................................17, 23

*Rhodes v. Marix Servicing, LLC*, 2020 WL 5760455 (D.N.J. 2020) ...............19, 26

*Riggins v. Millville Bd. of Educ.*, 2005 WL 1863666 (D.N.J. 2005).......................33

*RNC Sys., Inc. v. Mod. Techs. Grp., Inc.*,
  2014 WL 12773795 (D.N.J. 2014) ......................................................................13

*Romero v. CSX Transp., Inc.*, 270 F.R.D. 199 (D.N.J. 2010) .................................40

*Rosario v. City of New York*, 2023 WL 2908655 (S.D.N.Y. 2023)........................36

*Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*,
  127 F. Supp. 3d 607 (E.D. Va. 2015) ...................................................................7

*Sabinsa Corp. v. HerbaKraft, Inc.*, 2022 WL 17446485 (D.N.J. 2022).................22

*Scherman v. Kansas City Aviation Ctr., Inc.*,
  1994 WL 675323 (D. Kan. 1994).........................................................................7

*Shalomi v. W. Techs., Inc.*, 2007 WL 1213686 (D. Nev. 2007) ...............................8

*SING for Serv., LLC v. DOWC Admin. Servs., LLC*,
   2023 WL 3294279 (S.D.N.Y. 2023)....................................................26

*Singer v. State*, 472 A.2d 138 (N.J. 1984) ............................................17

*SmithKline Beecham Corp. v. Rohm & Haas Co.*,
   89 F.3d 154 (3d Cir. 1996) ..........................................................11

*Sokoloff v. Gen. Nutrition Cos., Inc.*, 2001 WL 536072 (D.N.J. 2001) ...............4, 6

*Southwick v. City of Rutland*, 35 A.3d 113 (Vt. 2011) ............................15

*Spencer v. Wal–Mart Stores*, 469 F.3d 311 (3d Cir. 2006) .....................28

*Squires ex rel. Squires v. Breckenridge Outdoor Educ. Ctr.*,
   2013 WL 1231557 (D. Colo. 2013) ...................................................36

*Strand v. Auto. Machinists Pension Tr.*,
   2007 WL 2029068 (D. Or. 2007) ..............................................25, 27

*Supernus Pharms., Inc. v. TWi Pharms., Inc.*,
   2018 WL 2175765 (D.N.J. 2018) ......................................................37

*SupplyOne, Inc. v. Triad Packaging, Inc.*,
   2014 WL 3676524 (E.D. Pa. 2014) ..............................................6, 10

*Synagro Techs., Inc. v. GMP Haw., Inc.*,
   2007 WL 851271 (D. Haw. 2007) .....................................................25

*Szczepanski v. Newcomb Med. Ctr., Inc.*, 661 A.2d 1232 (N.J. 1995) ...................28

*Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012) .................................37

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   2013 WL 11312429 (D.N.J. 2013) .............................................22, 36

*Trs. of Univ. of Penn. v. Lexington Ins. Co.*,
   1986 WL 2785 (E.D. Pa. 1986) .......................................................27

*United States ex rel. Nichols v. Computer Scis. Corp.*,
   499 F. Supp. 3d 32 (S.D.N.Y. 2020) ...............................................27

*United States ex rel. Simring v. Univ. Physician Assocs.*,
   2012 WL 10033888 (D.N.J. 2012) ..................................................25

*United States v. Hodge*, 321 F.3d 429 (3d Cir. 2003) ...........................................15

*Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934 (11th Cir. 2020)....................26

*Vistein v. Am. Registry of Radiologic Technologists*,
    2010 WL 918081 (N.D. Ohio 2010)..................................................................31

*Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*,
    2013 WL 1716468 (D.N.J. 2013) ..........................................................35, 37–38

*Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*,
    2013 WL 1876441 (D.N.J. 2013) .......................................................................37

*Washington v. Phila. City Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996) ...............................................................................29

*Wyndham Hotels & Resorts, LLC v. Northstart Mt. Olive, LLC*,
    2015 WL 1004018 (D.N.J. 2015) .......................................................................20

*Zhu v. Li*, 2023 WL 4770431 (N.D. Cal. 2023)......................................................15

**Statutes**

28 U.S.C. § 1920..............................................................................30–32, 35, 37

**Rules**

Fed. R. Civ. P. 9(g) ............................................................................................1, 6–8

Fed. R. Civ. P. 13(a)...............................................................................................10

Fed. R. Civ. P. 26(a)..................................................................................................9

Fed. R. Civ. P. 50(a)..................................................................................................9

Fed. R. Civ. P. 54(d) .......................................................................................1, 4, 6–7

Local Civil Rule 54.2 .................................................................................................1

# GLOSSARY OF TERMS

**Br.:** LC's Memorandum of Law in Support of its Motion

**BSF:** Boies Schiller Flexner LLP

**CLS:** Community Legal Services of Philadelphia

**Clio Report:** Clio's annual Legal Trends Report

**Cohen Rpt.:** Report of Jeffrey A. Cohen, submitted in support of Freedom's opposition to LC's Motion

**Cuomo Decl.:** Declaration of Jerry A. Cuomo in Support of Freedom's Opposition to LC's Motion

**FK:** Friedman Kaplan Seiler Adelman & Robbins LLP

**Freedom:** Freedom Mortgage Corporation

**Lack Decl.:** Declaration of Robert J. Lack in Support of LC's Motion

**LC:** LoanCare, LLC

**Motion:** LC's Motion for Attorneys' Fees and Expenses

**PTO:** Joint Final Pretrial Order

**SAC:** LC's Second Amended Counterclaim

**Singer Decl.:** Declaration of Stuart H. Singer in Support of LC's Motion

**SSA:** Amended and Restated Subservicing Agreement between Freedom and LC, dated February 1, 2010, attached as Exhibit 1 to Freedom's Amended Complaint

**Studer Rpt.:** Expert Opinions of Jerome C. Studer, Esq., submitted in support of Freedom's opposition to LC's Motion

**Vazquez Rpt.:** Report of Hon. John Michael Vazquez, submitted in support of Freedom's opposition to LC's Motion

**Withdrawn Counterclaims:** Counts Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen of the SAC, *i.e.*, breach of contract counterclaims worth nearly $2 million that LC ultimately withdrew at trial (*see* Cuomo Decl. Ex. B)

## PRELIMINARY STATEMENT

LC seeks to recover $19,163,528.11 in attorneys' fees, expenses, and costs—near equal to its total damages award—based solely on its purported contractual entitlement to indemnification from Freedom. But LC is foreclosed from such recovery for multiple independent reasons. And, in any event, LC comes nowhere close to satisfying its burden of showing the reasonableness of its requested award.

*First*, LC cannot obtain post-trial contractual attorneys' fees under Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54.2 because contractual attorneys' fees and expenses are elements of damages that it was required to plead and then prove during trial, and LC did neither. LC also failed to plead contractual attorneys' fees and expenses as *special* damages under Federal Rule of Civil Procedure 9(g), thus waiving the right to such fees. Indeed, LC not only failed to plead such damages or include them in its disclosures during discovery, it also failed to mention its purported right to contractual indemnification in the controlling PTO.

*Second*, LC's requested fees and expenses are not available under the SSA. Contrary to LC's boundless reading of Section 8.4, the provision does not apply to losses from any Freedom conduct whatsoever but instead is limited by specific enumerated categories that LC ignores. Any indemnification is limited to *misconduct* akin to that described in those categories, not non-contractual tortious conduct entirely separate and independent from the SSA and not the mere good-faith

filing of a lawsuit (including one, as here, with successful claims). The jury's rejection of the sole breach of contract counterclaims that LC pressed at trial forecloses LC's requested recovery.

*Third*, even assuming LC could recover any attorneys' fees and expenses, it has failed to meet its burden to prove its entitlement to its requested award. The prevailing hourly rates within the Camden Vicinage are well below the rates LC has requested for its *48 attorneys and support staff* who worked on this case. And LC does not even try to justify the *20,391* hours of its two law firms, which are facially excessive. Nor is LC entitled to the many millions in other fees, costs, and expenses that it seeks, which are not recoverable under the SSA or otherwise.

For these reasons and those discussed below, the Motion should be denied.

## ARGUMENT

## I.   NEW JERSEY LAW GOVERNS LC'S MOTION.

LC is wrong that Virginia law governs the availability or reasonableness of contractual attorneys' fees. (Br. 3, 8.) The Third Circuit mandates the application of New Jersey's choice-of-law rules to motions seeking recovery of attorneys' fee and expenses motions. *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). And under New Jersey's choice-of-law rules, "'a court sitting in New Jersey is required to apply New Jersey rules to procedural matters even where those same rules require the

application of the substantive law of another state.'" *Credit One Bank, N.A. v. Lieberman*, 2023 WL 4014471, at *3 (3d Cir. 2023) (quoting *Chin*, 538 F.3d at 279). "'The Supreme Court of New Jersey has made clear that an award of attorneys' fees is a *procedural* matter to which its court rules shall apply.'" *Id.* (quoting *Chin*, 538 F.3d at 279) (emphasis added). New Jersey law thus applies to a request for attorneys' fees, "even in the face of a contractual choice-of-law provision that selects another state's law." *Id.* (citing *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847–48 (N.J. 1999)); *see also Chin*, 538 F.3d at 279–80 (trial court's failure to apply New Jersey law to motion for attorneys' fees was reversible error).

Under New Jersey law, there is "a strong policy disfavoring shifting of attorneys' fees." *N. Bergen*, 730 A.2d at 848; *accord McGuire v. City of Jersey City*, 593 A.2d 309, 326–27 (N.J. 1991) ("[B]ecause such contractual provisions conflict with the common-law preference for avoiding awards of fees, they are strictly construed by our courts"). Although parties can contractually agree to attorneys' fees, "even where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." *N. Bergen*, 730 A.2d at 848 (collecting cases); *accord Jamy Enters., LLC v. E & S Food Serv. Corp.*, 2009 WL 3271482, at *2–3 (D.N.J. 2009). Courts thus "strictly construe[]" contractual indemnity clauses against the indemnitee (in this case, LC), resolving any ambiguity against that party. *Ramos v.*

3

*Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1159 (N.J. 1986); *see Dare v. Freefall Adventures, Inc.*, 793 A.2d 125, 136 (N.J. Super. Ct. App. Div. 2002).

## II.   LC IS FORECLOSED FROM SEEKING ATTORNEYS' FEES AND EXPENSES.

### A.   LC Cannot Obtain Post-Trial Contractual Attorneys' Fees and Expenses Under Rule 54(d)(2).

Under Federal Rule of Civil Procedure 54(d)(2)(A), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*." (Emphasis added.) Thus, Rule 54(d)(2) "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Fed. R. Civ. P. 54(d)(2) advisory committee's note to 1993 amendment.

Under New Jersey law, "a claim for attorney[s'] fees pursuant to a contractual arrangement is an element of damages that must be pleaded and proved during trial." *Jamy Enters.*, 2009 WL 3271482, at *3; *see also Sokoloff v. Gen. Nutrition Cos., Inc.*, 2001 WL 536072, at *7 (D.N.J. 2001) (collecting cases); *Cunningham v. Fin. Modeling Concepts, Inc.*, 2006 WL 2986616, at *5 (N.J. Super. Ct. App. Div. 2006) ("The enforcement and award of attorney's fees to an aggrieved party pursuant to contractual provisions is tantamount to adjudicating damages for breach of contract." (quotation and citation omitted)); *Belfer v. Merling*, 730 A.2d 434, 443–

44 (N.J. Super. Ct. App. Div. 1999) (attorneys' fees "must be proved in the same manner as any other item" and "be assessed by the finder of fact as a matter of right and in the actual amount established by the proofs").[1]

Thus, "contractual provisions for attorney[s'] fees should be decided by the trier of fact[] and not through a motion after trial." *Jamy Enters.*, 2009 WL 3271482, at *3; *see also Marina Del Rey Assocs., LLC v. Cmty. Realty Mgmt., Inc.*, 2016 WL 4197303, at *9 (N.J. Super. Ct. App. Div. 2016) (attorneys' fees could not be addressed post-trial because attorneys' fees were an element of damages, and moving party did not provide timely discovery of those specific damages). That is because, "[i]n order to award attorneys' fees and/or costs," the Court necessarily "would be required to substantively consider [LC's] entitlement to such sums under the terms of the [parties' contract]" on issues that "would require the Court to delve into the substance of . . . the merits of the case." *Adwalls Media, LLC v. Adwalls, LLC*, 2013 WL 375212, at *3 (D.N.J. 2013), *adopted*, 2013 WL 375447 (D.N.J.

---

[1] Virginia law similarly treats contractual attorneys' fees as an element of damages that must be pled and proven through evidence at trial, no different than any other contract claim. *See Connelly v. Blot*, 2017 WL 11501501, at *2 (E.D. Va. 2017) (the right to contractual attorneys' fees "accrues when the party first retains counsel in a case and can be plead in the complaint in the first instance, despite the total of fees to be incurred over the course of the case being unknown at the time"); *Graham v. Cmty. Mgmt. Corp.*, 805 S.E.2d 240, 242 (Va. 2017) ("[A] claim exists in favor of a party seeking recovery of fees when that party first incurs fee expenses in the action."); *Online Resources Corp. v. Lawlor*, 736 S.E.2d 886, 898–99 (Va. 2013) (claims for contractual attorneys' fees must be pled to be recoverable).

2013). This, "[t]he Court is not permitted to do." *Id.*

Post-trial resolution is especially inappropriate here because Section 8.4 of the SSA is an indemnification provision, not a "prevailing party" provision pursuant to which the entitlement to fees depends on a trial outcome. LC was obligated to plead and prove its indemnification claim, but chose not to do so. *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *6 (E.D. Pa. 2014) (finding mature indemnification right as of breach). Courts consistently hold that the right to fees pursuant to non-prevailing party provisions cannot be resolved by post-trial motion.[2]

Accordingly, this Court cannot entertain LC's Rule 54(d)(2) motion. *See Sokoloff*, 2001 WL 536072, at *8; *see also High Crest Functional Med. LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2019 WL 4099710, at *3 (D.N.J. 2019) (finding breach of contract damages unrecoverable via Rule 54(d)(2) motion).

### B. LC Has Waived Its Right to Obtain Contractual Attorneys' Fees and Expenses Because It Failed to Plead Them.

The Third Circuit has held that attorneys' fees and expenses constitute "special" damages and must be pleaded specifically, pursuant to Federal Rule of

---

[2] *See, e.g.*, *Lifespan Corp. v. New Eng. Med. Ctr., Inc.*, 2011 WL 3841085, at *6 (D.R.I. 2011) (contractual claims arising from non-"prevailing party" indemnification provisions "must be proved at trial, not by way of a postjudgment motion"); *Lynch v. Sease*, 2006 WL 1206472, at *4 (E.D. Ky. 2006) (denying attorneys' fees where party failed to prove attorneys' fees as element of damages at trial under non-"prevailing party" provision); *accord Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006).

Civil Procedure 9(g). *Maidmore Realty Co. v. Maidmore Realty Co.*, 474 F.2d 840, 843 (3d Cir. 1973) (applying rule to attorneys' fees and cost).[3] A party that fails to plead attorneys' fees and expenses as special damages waives those fees and expenses. *E.g.*, *Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, 2016 WL 231018, at *2 (D.N.J. 2016), *aff'd*, 704 F. App'x 137 (3d Cir. 2017); *Merrill Lynch, Pierce, Fenner & Smith Inc v. Schwarzwaelder*, 2013 WL 1181569, at *1 (W.D. Pa. 2013); *Mumford v. GNC Franchising LLC*, 2007 WL 3003798, at *3 (W.D. Pa. 2007); *see also Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 715–17 (4th Cir.) (refusing post-verdict complaint amendment to add fees claim), *cert. denied*, 464 U.S. 848 (1983). Indeed, courts have held that parties failing to plead indemnification claims specifically and to include such claims in the pretrial order waive the right to later seek attorneys' fees and expenses. *See, e.g.*, *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, 2016 WL 1367176, at *6 (M.D. Pa. 2016) (waiver where movant did not file counterclaim for contractual attorneys' fees, nor did movant's original or amended answer allege entitlement to same); *Scherman v. Kansas City Aviation Ctr., Inc.*, 1994 WL 675323, at *2 (D. Kan. 1994) (waiver

---

[3] Other jurisdictions likewise have held that, where the law treats attorneys' fees as an element of damages, both Rules 54(d) and 9(g) require that such damages be pled specifically as special damages. *See, e.g.*, *Leafty v. Aussie Sonoran Cap. LLC*, 2017 WL 588717, at *1 (D. Ariz. 2017); *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 613–14 (E.D. Va. 2015).

where party never pled contractual indemnity or included same in pretrial order).

Although LC included a general request for attorneys' fees in the "Prayer for Relief" section of its SAC, courts routinely find such requests insufficient under Rule 9(g). *See, e.g.*, *Levin v. Five Corners Strategies, LLC*, 541 F. Supp. 3d 1262, 1273 (D. Colo. 2021); *In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *54–55 (Bankr. D.N.J. 2013); *Shalomi v. W. Techs., Inc.*, 2007 WL 1213686, at *4 (D. Nev. 2007). "[A]n indispensable allegation in a demand for relief is at least a general statement of the causes giving rise to the special damages." *In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *55. Where pleadings lack those allegations, the recovery of attorneys' fees and expenses is not permitted. *Buying for the Home, LLC v. Humble Abode, LLC*, 2006 WL 8458811, at *1 (D.N.J. 2006) (striking with prejudice request for attorneys' fees, costs, and disbursements on state law counterclaims devoid of required Rule 9(g) allegations indicating basis for same).[4]

Here, LC failed to plead a claim for contractual indemnification and to allege, in connection with counts on which it prevailed at trial, its entitlement to attorneys' fees and expenses under the SSA. In the SAC, LC cited Section 8.4 only in

---

[4] *See also Hammock v. Wal-Mart Stores, Inc.*, 2013 WL 11897800, at *3 (N.D. Ga. 2013) (finding insufficient notice where plaintiff did not specifically plead basis for attorneys' fees and rejecting request to amend); *Perry v. Serenity Behav. Health Sys.*, 2009 WL 1259367, at *2 (S.D. Ga. 2009) (precluding attorneys' fees because such fees were specialized damages not specifically pleaded in connection with relevant contract claim, despite being specifically pleaded for other claims).

connection with two Withdrawn Counterclaims as a basis to recover specified amounts of compensatory fees that LC paid to Fannie Mae and costs LC expended for property preservation. (SAC ¶¶ 182, 187.) LC provided no notice of its purported contractual entitlement to attorneys' fees and expenses as damages under Section 8.4. (*See id.* ¶¶ 98, 113, 119, 121.)

Nor did LC include any contractual attorneys' fees and expenses within its damages calculations during discovery. LC's Rule 26(a)(1)(A)(iii) disclosures provided "a summary computation of each category of damages claimed" and *omitted* attorneys' fees and expenses. (Cuomo Decl. Ex. C at 7–9; *see id.* at Ex. A.)

Finally, in the PTO, LC failed to include any indemnification claim, much less any stated entitlement to contractual attorneys' fees and expenses under Section 8.4. (*See* PTO at 22, D.E. 196 (stating only that it was a legal issue "[w]hether [LC] is entitled to an award of costs and attorneys' fees and, if so, in what amount").) Applying this Court's reasoning from its opinion on LC's Rule 50(a) motion, LC is not permitted "to raise its indemnification theory now" because "it was not raised in the PTO, . . . which controls at this juncture." *Freedom Mortg. Corp. v. LoanCare, LLC*, 2023 WL 4759162, at *13 n.9 (D.N.J. 2023); *see also Bornstein v. Cnty. of Monmouth*, 2015 WL 2125701, at *8 (D.N.J. 2015) (collecting waiver cases).[5]

---

[5] Under the claim preclusion doctrine, LC is barred from bringing a new action asserting a contractual indemnification claim arising from the same conduct alleged in this action. *See Houser v. Pa. Dep't of Corr.*, 2022 WL 5434311, at *1 (3d Cir.

In reply, LC may argue that the parties agreed—seven years into the litigation and years after the controlling PTO—that "[a]ny award of attorneys' fees under the [SSA] is a post-trial issue to be determined by the Court." (D.E. 279 at 2.) But the parties reached that agreement *before* LC had ever indicated it would pursue a first-party contractual indemnification theory in this case. Given that LC had never suggested it was pursuing a claim for fees and costs under Section 8.4 of the SSA, Freedom could not possibly have waived its right to have LC plead that claim or its Seventh Amendment right to have a jury decide it.

Under the same circumstances, the court in *Reed Auto of Overland Park, LLC v. Landers McLarty Olathe KS, LLC*, 2022 WL 392302 (D. Kan. 2022), found that no claim for contractual attorneys' fees could be presented after trial. As in this case, the parties in that case agreed that the issue of attorneys' fees would be addressed after trial. And like this case, when the parties reached that agreement, the defendant

---

2022) ("The preclusive effect of a federal-court judgment is determined by federal common law[.]" (citations omitted)); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 278 (3d Cir. 2016) (same). A new suit would be between the same parties and involve a claim LC could have raised in this action. *See, e.g., Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (claim preclusion where "the underlying events in both cases [were] the same"); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (claim preclusion despite "legal claims . . . rest[ing] on somewhat different grounds in the two proceedings"). So, too, would a later action be barred under Rule 13(a). *E.g., SupplyOne*, 2014 WL 3676524, at *6 n.8 (Rule 13(a) barred new action with indemnification counterclaim "aris[ing] out of the transaction or occurrence that it is the subject matter of the opposing party's claim").

had not asserted a counterclaim for contractual attorneys' fees in its pleading or in the pretrial order. *Id.* at *4–5. The court found that the stipulation—which was made at a time when the moving party was not pursuing contractual attorneys' fees—could not "transform[] the issue into a collateral one that can be raised in a post-trial motion." *Id.* at *5. The same reasoning bars LC's claim for indemnification here.

## III.   LC IS NOT ENTITLED TO FEES AND EXPENSES UNDER THE SSA.

LC requests a limitless interpretation of Section 8.4 that would require Freedom to indemnify LC for "any and all Losses arising out of [Freedom's] conduct" whatsoever, regardless of whether that conduct was wrongful, in bad-faith, related to the SSA, or related to claims in this case on which LC was unsuccessful. (Br. 7; *see* SSA § 8.4.) The plain language of Section 8.4 forecloses LC's reading.

The general language on which LC relies is followed by eleven specific categories of "conduct" to which Section 8.4 applies. Well-established principles of contract interpretation dictate that the broad prefatory language in Section 8.4 should be interpreted in light of—and limited by—these eleven, more-specific categories. *See SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 161 (3d Cir. 1996). But LC impermissibly interprets "any and all Losses arising out of [Freedom's] conduct" in isolation from the eleven categories of conduct that follow, excising them from the SSA. (Br. 3, 7.)

It does not matter that these eleven specific categories follow the phrase

11

"including but not limited to" in Section 8.4. As the Third Circuit has made clear, "it is widely accepted that general expressions such as 'including, but not limited to' that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 520 (3d Cir. 2012) (citation omitted); *see, e.g.*, *EQT Prod. Co. v. Terra Servs., LLC*, 2018 WL 658871, at *11 (W.D. Pa. 2018) (attorneys' fees not covered in phrase "any costs or damages" where, following the phrase "including, but not limited to," provision enumerated specific categories of "citations, penalties or fines from any applicable governmental authority").[6] The "including but not limited to" language does not give LC license to obtain indemnification for every conceivable type of conduct by Freedom, no matter how far afield that conduct is from the categories that the parties identified in Section 8.4.

None of the eleven enumerated categories describes innocent or non-wrongful conduct, let alone conduct such as the mere initiation of a lawsuit in good faith or a

---

[6] *See also New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 212 F. Supp. 2d 763, 773 (S.D. Ohio 2002) (finding liability limited to damages "of the same general nature as those specified" following the phrase "including but not limited to"); *People v. Arias*, 195 P.3d 103, 109–10 (Cal. 2008) (rejecting broad interpretation of "including, but not limited to," noting that "when specific words follow general words . . . or vice versa . . . the general term or category is restricted to those things that are similar to those which are enumerated specifically" (quotation omitted)).

lawsuit like Freedom's with multiple *successful* claims. Instead, the categories include *misconduct* related to the subject matter of the SSA and the representations, warranties, and covenants therein. Had the parties wished to include losses stemming from the defense of a good-faith lawsuit by Freedom, they "would have said so" expressly.[7] *E.g.*, *RNC Sys., Inc. v. Mod. Techs. Grp., Inc.*, 2014 WL 12773795, at *12 (D.N.J. 2014).

So, too, had the parties intended to give such effect, they would have expressly stated that Section 8.4 applies to non-contractual, tortious conduct entirely separate and independent from the SSA. The enumerated categories show just the opposite. Indeed, only in Section 8.4(i)—an inapplicable sub-provision that LC does not reference—did the parties provide for indemnification stemming from "the non-fulfillment or non-performance of any covenant or obligation by [Freedom] or any Prior Servicer *whether or not in this Agreement*." (Emphasis added.) But the phrase "whether or not in this Agreement," which the parties omitted from every other enumerated category of Section 8.4, is a reference to the non-fulfillment or non-

---

[7] In support of its claimed entitlement to fees and expenses incurred in defending against Freedom claims, LC relies only on two cases, both of which (i) applied inapplicable Virginia law and (ii) dealt with the factually inapposite scenario in which a contractual provision provided for fees incurred resulting from the performance or non-performance of the contract, and then the non-movant brought claims relating to the same. (Br. 22 (citing *Coady*, 515 S.E.2d at 276; *Shen Valley Masonry, Inc. v. Thor, Inc.*, 81 Va. Cir. 89, at *7 (2010)).) Here, Freedom did not bring claims related to its own alleged "conduct" at issue in LC's tort claims.

performance of a *contractual* obligation in the SSA or another agreement with a Prior Servicer. Again, the provision says nothing about tortious conduct.

Nor was there any finding—in any of the counts on which LC was successful—of Freedom's contractual breach or non-fulfillment/non-performance of a "covenant or obligation" (let alone evidence of damages tied to the same). (*See* D.E. 365; D.E. 364 at 22–24.)[8] *See In re Pelican Pool & Ski Ctr., Inc.*, 2009 WL 2244573, at *16 (D.N.J. 2009) (courts enforcing contractual fee-shifting provisions are "merely adjudicating damages for breach of contract"); *Belfer*, 30 A.2d at 443–44 (same). To the contrary, the jury found Freedom liable for only certain tortious conduct—conduct that, as LC has contended repeatedly, was entirely separate from the SSA. (D.E. 103 at 10 (tort claims "do not rely on any duties derived from a contract"; "no element of these [tort] claims involves establishing Freedom's failure to comply with any part of the contract").)[9] This is fatal to LC's Section 8.4 theory. Courts regularly reject the contractual recovery of tort-related losses in such

---

[8] The jury rejected LC's breach of contract counterclaims, the only counts seeking Freedom's liability for not fulfilling or performing a covenant or obligation.

[9] (D.E. 103 at 19–20 (LC's pleading "expressly allege[s]" that "wire payments and attempted debits that [LC] made in reliance on Freedom's misrepresentations and omissions were not governed by the SSA"; "the duty that Freedom breached . . . clearly did not arise from the contract"; "There are no provisions in the SSA, nor in any other applicable contract, which govern the timing and manner of the wire payments [LC] made to Freedom or Freedom's misrepresentations and seizure of [LC] funds directly out of the custodial accounts.").)

circumstances, even where the contract established the parties' relationship.[10] *See, e.g.*, *Bellerive v. EOR Inc.*, 3 Wash. App. 2d 1016, 2018 WL 1729776, at *5–6 (2018) (denying contractual attorneys' fees on unjust enrichment claim that "existed outside of" and was independent from agreement); *see also Exxess Electronixx v. Heger Realty Corp.*, 75 Cal. Rptr. 2d 376, 386 (Ct. App. 1998).

At its base, LC's boundless reading of Section 8.4 would lead to absurd results that courts should avoid. *See, e.g.*, *United States v. Hodge*, 321 F.3d 429, 439 (3d Cir. 2003); *Innes v. Innes*, 569 A.2d 770, 777 (N.J. 1990). If all "conduct," whatever variety, truly were included, losses stemming from *every* Freedom action—however trivial, whenever it occurred, or unrelated to the subject matter of the parties' contract—would be covered. The Court should reject such a reading.[11]

---

[10] LC relies on *Zhu v. Li*, 2023 WL 4770431 (N.D. Cal. 2023), which actually supports *Freedom's* position. (*See* Br. 7–8.) There, the court found the plaintiff's tort claims fell *outside of* the contractual attorneys' fee provision and were not indemnifiable. *Zhu*, 2023 WL 4770431, at *4–5. Each of LC's other cited cases are off point. (*See* Br. 7); *Coady v. Strategic Res., Inc.*, 515 S.E.2d 273, 275–76 (Va. 1999) (indemnification clause covered conduct related to performance or non-performance *under the agreement*); *Southwick v. City of Rutland*, 35 A.3d 113, 116 (Vt. 2011) (finding indemnification clause covered negligence claims where provision expressly covered negligent conduct—namely, "claims for bodily injury or property damage arising from or out of" a particular event).

[11] To the extent there is contractual ambiguity regarding whether Section 8.4 applies to first-party disputes, that ambiguity creates fact issues that a jury must, but did not, resolve—another reason to deny LC's motion. *See McCann v. Whitehall Manor Condo. Ass'n, Inc.*, 2021 WL 5505168, at *5 (N.J. Super. Ct. App. Div. 2021) (error to grant first-party indemnification); *Intervet, Inc. v. Mileutis, Ltd.*, 2016 WL 740267, at *9 (D.N.J. 2016) (denying first-party indemnification); *Helman v.*

## IV.   LC'S REQUESTED ATTORNEYS' FEES ARE UNREASONABLE.

Under New Jersey law, the Court must first determine the "lodestar" amount, *i.e.*, "the number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by the reasonable hourly rate." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 428 (N.J. 2009). This requires a two-step inquiry: (i) whether the hourly rate sought is reasonable; and (ii) whether the number of hours of work claimed is reasonable. *R.M. v. Sup. Ct. of N.J.*, 918 A.2d 7, 12 (N.J. 2007). The party seeking fees (LC) bears the burden of establishing the reasonableness of the hourly rate and hours expended. *KCG Holdings, Inc. v. Khandeker*, 2020 WL 7053229, *4 (S.D.N.Y. 2020) (applying New Jersey law).

Here, LC's burden to demonstrate reasonableness is mandated by not only New Jersey case law on the recovery of attorneys' fees generally but also the SSA's plain language, which permits (if anything) only "reasonable" attorneys' fees. (SSA §1.33.) LC's requested lodestar is based on unreasonably high rates and an astonishing  20,391.20  hours  billed  by  26 attorneys  and  summer  associates,

---

*Marriott Int'l, Inc.*, 2021 WL 3473480, at *3 (D.V.I. 2021) (based on New Jersey law, declining first-party indemnification); *see also myCUmortgage, LLC v. Cenlar FSB*, 2019 WL 1397140, at *5 (S.D. Ohio 2019) (applying New Jersey law and strictly construing against indemnification because of ambiguity); *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 421–22 (S.D.N.Y. 2007) (rejecting summary judgment on attorneys' fees claim because of need to strictly construe attorney-fee-shifting provision under New Jersey law).

13 paralegals, and 9 legal assistants—hours that LC does not even attempt to justify.

## A. LC Fails to Establish the Reasonableness of the Requested Rates.

The "reasonable hourly rate" is "calculated according to the prevailing market rates in the relevant community, and should include an assessment of the experience and skill of the prevailing party's attorneys and a comparison . . . to the rates prevailing in the community for similar services by comparable lawyers." *Hansen v. Rite Aid Corp.*, 290 A.3d 159, 172 (N.J. 2023) (quotations omitted). The court must "ensure that the hourly rate awarded is fair, realistic, and accurate,' allowing for adjustments to the requested rate when appropriate." *Id.* at 215. The rate is one that "would be charged by an adequately experienced attorney possessed of average skill and ordinary competence—not those that would be set by the most successful or highly specialized attorney in the context of private practice." *Singer v. State*, 472 A.2d 138, 145 (N.J.1984). LC bears the burden of proving the requested rates' reasonableness—a task most often accomplished by submission(s) from other "unaffiliated" lawyers in the relevant market. *See, e.g.*, *Rendine v. Pantzer*, 661 A.2d 1202, 1217 (N.J. 1995).

"[A] prevailing party's attorneys should be compensated based on market rates in the vicinage of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 699 (3d Cir. 2005). Here, the relevant market community is South Jersey because the Court is based in the Camden Vicinage. *FTC v. Circa Direct LLC*,

912 F. Supp. 2d 165, 173–74 (D.N.J. 2012) (Bumb, J.) (collecting cases). Courts reject evidence of rates outside of South Jersey without a showing—absent here—that counsel in the Camden Vicinage were unwilling to handle the case or lacked necessary "special expertise." *Access 4 All, Inc. v. Boardwalk Regency Corp.*, 2012 WL 3627775, at *6 (D.N.J. 2012) (rates from attorneys who have not practiced in South Jersey not "helpful"), *adopted*, 2012 WL 3228748 (D.N.J. 2012) (Bumb, J.); *Circa Direct*, 912 F. Supp. 2d at 173–74 (failure to meet burden where party submitted survey data without evidence from unaffiliated South Jersey practitioner); *see also Interfaith*, 426 F.3d at 705–06.[12]

Against this backdrop, the rates billed by BSF and FK—general commercial litigators who do not hold themselves out as mortgage servicing or subservicing specialists—were unreasonably high, significantly outpacing prevailing rates determined by Camden Vicinage courts to be reasonable. *See K.N. v. Gloucester City Bd. of Educ.*, 2022 WL 613846, at *3–4 (D.N.J. 2022) ($545 and $500/hr, rates of founding partners of a firm with decades of specialized expertise), *appeal dismissed*, 2022 WL 4375630 (3d Cir. 2022); *City of Atl. City v. Zemurray St. Cap., LLC*, 2022 WL 92802, at *3 (D.N.J. 2022) ($290/hr for attorney with two-years' experience);

---

[12] *See also Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 2012 WL 6595072, at *3 n.3 &*4 (D.N.J. 2012) (rejecting rates of North Jersey practitioners); *Pretlow v. Cumberland Cnty. Bd. of Soc. Servs.*, 2005 WL 3500028, at *3–4 (D.N.J. 2005) (finding rates in North and Central Jersey not relevant to Camden Vicinage).

*Hansen Found., Inc. v. City of Atl. City*, 2021 WL 3674354, at *7–8 (D.N.J. 2021) ($410/hr partner rate and $300–$325/hr associate rates); *Rhodes v. Marix Servicing, LLC*, 2020 WL 5760455, at *4–5 (D.N.J. 2020) ($300/hr rate partner rate).

The rates of LC's counsel—reaching $1,125/hr—are far higher than prevailing complex commercial litigation hourly rates at firms based in South Jersey, which are $500–605/hr for litigation partners and $325–385 for litigation associates. (Cohen Rpt. 18.) In fact, as detailed in the opinion of Jeffrey A. Cohen of Flaster Greenberg P.C. (a prominent complex commercial litigation firm in the Camden Vicinage), BSF associates on this matter billed, on average, nearly $100 more than Flaster Greenberg partners with less than 15 years of experience and only $27 less than the average hourly rate for a litigation partner at his firm, and the average partner rates at both BSF and FK greatly exceed by hundreds of dollars those of partners at his firm with commensurate experience. (*Id.* at 9; *see* Vasquez Rpt. 8.)

Further, as detailed in the reports of Mr. Cohen and the Honorable John Michael Vazquez (a former District Judge in this District), LC's counsel's rates far exceed the rates in other sources on which courts in this District rely. For example, the rate structure of CLS, although reflective of the higher-rate Philadelphia market (Cohen Rpt. 11; Vazquez Rpt. 9), "'has been approvingly cited by the Third Circuit as being well developed and has been found . . . to be a fair reflection of the prevailing market rates.'" *K.N.*, 2022 WL 613846, at *3 (quoting *Maldonado v.*

*Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)). Per the CLS rates, for instance:

- Messrs. Lack and Singer would be billed at $735–850/hr (Cohen Rpt. Ex. B) but Mr. Lack billed well over that from 2016 through 2020, including at a rate of $1,125/hr in 2020 (Lack Decl. ¶¶ 9–10), and Mr. Singer billed at a rate of $941/hr in 2023 (Singer Decl. ¶¶ 9–10).

- Ms. McElroy would be billed at a $420–525 rate (Cohen Rpt. Ex. B) but billed at an average of $621/hr while a partner and $560/hr while an associate (Singer Decl. ¶¶ 9–10).

- Messrs. Oliu, Ezray, and Hilborn and Ms. Tussey would be billed at $320–415/hr (Cohen Rpt. Ex. B) but exceeded that range each year, with Messrs. Oliu and Ezray billing as high as $703/hr in 2023 (Singer Decl. ¶¶ 9–10).

- Whereas attorneys with less than two years of post-law school experience would have billed at a range of $235–260/hr (Cohen Rpt. Ex. B), BSF attorneys with such experience billed at far higher average rates, including $535/hr (Bront and Mora) and $564/hr (Lavare) (Singer Decl. ¶¶ 9–10).

(Cohen Rpt. 11–12 & Ex. C (chart comparing CLS and LC counsel rates); Vazquez Rpt. 9–11.)

Courts also rely on the Clio Report. *See Zemurray*, 2022 WL 92802, at *3 (collecting cases). The most current version of that report reflects an average $330/hr for lawyers in New Jersey and $306/hr for "Civil Litigation"—a rate lower than *all* LC's attorneys despite the fact that Clio rates incorporate higher North Jersey rates.[13]

---

[13] *Ams. for Prosperity v. Grewal*, 2021 WL 1153194, at *13 (D.N.J. 2021) ("Though Hackensack is in New Jersey, it is in the northern part of the state, where . . . the prevailing rate is higher than that in southern New Jersey."); *Wyndham Hotels & Resorts, LLC v. Northstart Mt. Olive, LLC*, 2015 WL 1004018, at *3 (D.N.J. 2015) ("[A]ttorneys practicing in and around Newark, New Jersey tend to command a higher hourly rate than partners practicing in and around Camden, New Jersey[.]");

(Cohen Rpt. Ex. D at 70, 72; Cohen Rpt. 12–13; Vazquez Rpt. 8–9.)

In an effort to achieve higher rates than the market provides, LC relies first on the opinion of Judge Linares—who sat exclusively in the Newark Vicinage of this District, now is a Newark-based partner at McCarter & English, LLP (a firm without an office in the Camden Vicinage),[14] and previously practiced exclusively in New York City and Essex County, NJ (D.E. 386-2 at 1–2 & App'x A). Judge Linares's experience is limited to the North Jersey and New York area—and, importantly, his opinion did not consider or provide *any* data regarding South Jersey rates. Accordingly, his opinion is simply not probative of the rates inquiry in this case. *See, e.g.*, *Access 4 All*, 2012 WL 3627775, at \*4, \*6. Nor, in any event, can his opinion (that Camden Vicinage rates are "equivalent" to rates charged in New Jersey generally (D.E. 386-2 at 8)) be squared with clear case law in this Vicinage or evidence of Flaster Greenberg rates in complex commercial litigation.

---

*Kumon N. Am., Inc. v. Timban*, 2014 WL 2932653, at \*12 (D.N.J. 2014) ("[P]artners practicing in and around Newark, New Jersey tend to command a higher hourly rate than partners practicing in and around Camden, New Jersey."); *Connor*, 2012 WL 608483, at \*4 (rates in South Jersey lower than North Jersey ).

[14] Judge Linares states that he considered "the hourly rates of [his] own firm" (D.E. 386 at 8) but never states those rates, at the partner, associate, or any other level. Nor does Judge Linares provide any other support (other than his personal experience) for his opinions. *See, e.g.*, *Kuhar v. Petzl Co.*, 2022 WL 1101580, at \*8 (3d Cir. 2022) (affirming "net opinions" finding); *Faragalla v. Otundo*, 626 F. Supp. 3d 783, 788 (D.N.J. 2022) (expert's opinion lacked sufficient factual foundation).

LC then relies on a smattering of readily distinguishable cases (Br. 16–19):

- Multiple were outside of the Camden Vicinage and therefore "inapposite." *Access 4 All*, 2012 WL 3627775, at *6; *see In re LTL Mgmt. LLC*, No. 21-30589-MBK, D.E. 3406 (Bankr. D.N.J. 2022), *approved*, D.E. 3812 (Bankr. D.N.J. 2003) (Trenton Vicinage); *TransWeb, LLC v. 3M Innovative Props. Co.*, 2013 WL 11312429, at *15 (D.N.J. 2013), *adopted*, 16 F. Supp. 3d 385 (D.N.J. 2014) (Newark Vicinage); *NXIVM Corp. v. Sutton*, 2019 WL 4010859 (D.N.J. 2019) (Newark Vicinage).

- Multiple were patent or antitrust cases (cases of far-more-complex subject matter, necessitating specialized subject matter expertise not required here). *TransWeb*, 2013 WL 11312429, at *15; *Sabinsa Corp. v. HerbaKraft, Inc.*, 2022 WL 17446485, at *6 (D.N.J. 2022) (patent case rejecting entire D.N.J. as relevant for rates); *Avaya Inc. v. Telecom Labs, Inc.*, 2016 WL 10590071, at *11 (D.N.J. 2016) (antitrust action relying on unrebutted "detailed certification" describing "extraordinary difficulty in achieving success in antitrust cases" and "immense expense involved in presenting such cases"); *Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175, at *8 (D.N.J. 2015) (patent case).

- And multiple were cases in which the rates were unopposed or conceded. *D'Ottavio v. Slack Techs.*, 2022 WL 17976822, at *3–4 (D.N.J. 2022) (default judgment where application, including requested rate, was unopposed); *NXIVM*, 2019 WL 4010859 at *13 (applying New York law and approving FK rates where the parties had "expressly agreed" in the retainer to the reasonableness of those rates).

Lastly, LC relies on inflated rates from the 2022 Real Rate Report ("RRR"), with respect to the Philadelphia-Camden-Wilmington region. (Br. 18–19 (citing Singer Decl. Ex. 180).) Although these rates are skewed higher (for the reasons that Mr. Cohen and Judge Vazquez detail), they, too, are far lower than the rates that LC's counsel billed for this matter. (Cohen Rpt. 14 & Ex. F (chart comparing RRR and LC counsel rates); Vazquez Rpt. 11–12.)

**B.      LC Fails to Establish the Reasonableness of Its Requested Hours.**

As noted, LC bears the burden of establishing the reasonableness of its requested *20,391.20* law firm hours, by virtue of both well-established New Jersey law and the plain language of SSA Section 1.33. In its Motion, however, LC does not even *attempt* to meet this burden, skipping over this step *entirely* and instead, without commentary, submitting seven-years' worth of invoices. But "it does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Hansen*, 290 A.3d at 173 (quoting *Rendine*, 141 N.J. at 335). For this reason, courts undertake a "meticulous analysis" to determine the reasonableness of the hours claimed. *Id.* at 176; *see also Interfaith*, 426 F.3d at 703 n.5 (requiring a "thorough and searching analysis" (quotation marks omitted)). Courts "must 'go line, by line, by line' through . . . billing records supporting the application." *Boles v. Wal-Mart Stores, Inc.*, 2015 WL 4653233, at *7 (D.N.J. 2015) (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)), *aff'd*, 650 F. App'x 125 (3d Cir. 2016). The Court may not "accept passively the submissions of counsel[.]" *Rendine*, 661 A.2d at 1226. Hours should be reduced if they "exceed those that competent counsel reasonably would have expended to achieve a comparable result." *Hansen*, 290 A.3d at 173 (citation omitted). Here, to the extent *any* recovery is permitted, LC's requested hours should be reduced substantially.

As an initial matter, all fees and expenses of LC's local counsel, FK, should

be excluded because "a party that hires counsel from outside of the forum of the litigation may not be compensated for . . . costs of local counsel" unless "forum counsel are unwilling to represent plaintiff[.]" *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008) (citation omitted). Because LC has made no such showing here, LC's requested $734,769.13 in FK's fees and expenses must be denied. *See, e.g.*, *Ownbey v. Aker Kvaerner Pharms., Inc.*, 2023 WL 4447014, at *20 (D.N.J. 2023) (excluding 100% of local counsel fees); *Pretlow*, 2005 WL 3500028, at *9 (same).

Beyond that, "[h]ours spent that are excessive, redundant[,] and otherwise unnecessary are not compensable." *Access 4 All*, 2012 WL 3627775, at *8; *accord In re Johnson & Johnson Derivative Litig.* ("*J&J*"), 2013 WL 11228425, at *23 (D.N.J. 2013), *adopted*, 2013 WL 6163858 (D.N.J. 2013). As detailed in the Studer Report, incorporated by reference herein, LC's submitted time entries are replete with such issues, including for excessive/duplicative work (Studer Rpt. 26–35)[15];

---

[15] *N.J. Bankers Ass'n v. Platkin*, 2023 WL 5623940, at *6 (D.N.J. 2023) (350 hours for two briefs and oral argument preparation excessive, despite case complexity); *N.J. Primary Care Ass'n v. State Dep't of Human Servs.*, 2013 WL 3288082, at *7–8 (D.N.J. 2013) (74 hours for complaint, 257 hours for preliminary injunction ("PI") motion, and 132 hours for summary judgment motion excessive); *Port Drivers Fed'n 18, Inc. v. All Saints*, 2011 WL 3610100, at *6 (D.N.J. 2011) (60 hours for complaint with 59 paragraphs "utterly ridiculous" and reducing to 10 hours; 200 hours for PI motion "unwarranted" and reducing to 50 hours).

duplicative attendance (*id.* at 44–46)[16]; and mock trial time (*id.* at 41–42).[17]

Numerous other time entries should be excluded because they are so vague as to "prevent meaningful review." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 2011 WL 2293334, at *3 (D.N.J. 2011);[18] (*see* Studer Rpt. 14–16). That issue is compounded by LC's failure to provide "anything approaching a summary or breakdown of what exactly [its] claimed hours were spent on[.]" *Hansen Found.*, 2021 WL 3674354, at *13–14 (excluding vague or unclear time entries). A significant number of entries are redacted to omit any meaningful description regarding the performed task (Studer Rpt. 24–26), making it impossible to determine if the work was reasonable or related to unsuccessful claims.[19] And numerous others, where LC's descriptions do not provide sufficient detail, still reflect an inordinate

---

[16] *Platkin*, 2023 WL 5623940, at *6 (subtracting extra attorney time); *Johnson & Johnson*, 2013 WL 11228425, at *23, *25 (same); *Circa Direct*, 912 F. Supp. 2d at 176 (same).

[17] *Mallon v. Hudson Sav. Bank*, 2019 WL 3297393, at *16 (N.J. Super. Ct. App. Div. 2019) (rejecting mock trial fees), *see also, e.g.*, *Gerling v. Waite*, 2022 WL 558083, at *5 (E.D. Mo. 2022) (finding mock trial fees not reasonable given team size); *Goldstine v. FedEx Freight Inc.*, 2021 WL 952325, at *5 (W.D. Wash. 2021) (excluding attorney time related to jury consultant and focus groups).

[18] *Accord J&J*, 2013 WL 11228425, at *22; *United States ex rel. Simring v. Univ. Physician Assocs.*, 2012 WL 10033888, at *12 (D.N.J. 2012); *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 597 & 599 (D.N.J.), *aff'd*, 348 F. Supp. 2d 332 (D.N.J. 2004).

[19] *See Strand*, 2007 WL 2029068, at *6; *Synagro Techs., Inc. v. GMP Haw., Inc.*, 2007 WL 851271, at * 13 (D. Haw. 2007).

number of timekeepers and hours billed. (*Id.* at 38–44.)

In many of the instances where LC provides detail about its work, that detail shows that LC is attempting to recover fees for tasks that either did not advance this case to a resolution or corrected LC's own missteps. Among other things, LC inappropriately seeks fees for time spent on (i) unsuccessful claims (*id.* at 23); (ii) *LoanCare, LLC v. Freedom Mortgage Corp.*, No. 3:16-cv-612-TJC-MCR (M.D. Fla.), an action it needlessly filed in May 2016 (*after* Freedom filed this action) and which then was dismissed in August 2016 (*id.* at 22)[20]; (iii) a renewed motion for summary judgment that LC never filed (and thus was either unnecessary or, if granted, would have saved LC trial preparation fees that it now seeks to recoup) (*id.*)[21]; (iv) amending deficient pleadings (*id.* at 43–44)[22]; (v) unsuccessful motions (*id.* at 22–23)[23]; (vi) unsuccessful settlement/mediation efforts (*id.* at 23)[24]; and

---

[20] *Boles*, 2015 WL 4653233, at *7 (excluding time with "no bearing on the actual outcome of the case"), *aff'd*, 650 F. App'x 125 (3d Cir. 2016).

[21] *Hansen Found.*, 2021 WL 3674354, at *12.

[22] *See, e.g.*, *Flying R Aviation, LLC v. Bondio, LLC*, 2023 WL 4826217, at *6 (N.D. Tex. 2023); *SING for Serv., LLC v. DOWC Admin. Servs., LLC*, 2023 WL 3294279, at *11 (S.D.N.Y. 2023).

[23] *Rhodes*, 2020 WL 5760455, at *6; *see also P.J. by & through W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 172 (2d Cir. 2019).

[24] *Rhodes*, 2020 WL 5760455, at *8 (rejecting fees where settlement attempts were unsuccessful); *Columbia Pictures Indus., Inc. v. Adent*, 1992 WL 188420, at *1 (N.D. Ill. 1992) (no recovery for negotiating aborted settlement); *see also Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 941 (11th Cir. 2020) (approving

(vii) non-billable work and/or work unrelated to the action (*id.* at 24, 36–38).[25]

To the extent any hours were reasonably incurred, the hours of BSF attorney McElroy should be eliminated or substantially reduced before and up until March 26, 2018, when she applied for admission *pro hac vice*. (D.E. 54.) Despite not seeking admission until that time, Ms. McElroy was heavily involved, billing *639.3 hours* (far more than the lead attorney) and participating in numerous discussions with both opposing counsel and the client. (Singer Decl. Exs. 6–9, 14–23.)  Courts in this Circuit refuse to award, or substantially reduce, such fees incurred by attorneys before their *pro hac vice* admission. *Caplan v. Premium Receivables LLC*, 2015 WL 4566982, at *5 (W.D. Pa. 2015) (100% reduction); *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 452 (E.D. Pa. 2014) (100% reduction); *Bilazzo v. Portfolio Recov. Assoc., LLC*, 876 F. Supp. 2d 452, 461–69 (D.N.J. 2012) (15%, as opposed to 100%, reduction only due to "mandatory nature" of statutory fee award).

### C.   The Lodestar Amount Should Be Further Reduced Due to LC's Limited Success and Recovery.

To the extent that LC is entitled to any attorneys' fees and expenses under the

---

striking of time preparing for settlement conference); *United States ex rel. Nichols v. Computer Scis. Corp.*, 499 F. Supp. 3d 32, 46–47 (S.D.N.Y. 2020) (reducing settlement negotiation fees by 20%).

[25] *Hansen Found.*, 2021 WL 3674354, at *12; *J&J*, 2013 WL 11228425, at *49; *Strand v. Auto. Machinists Pension Tr.*, 2007 WL 2029068, at *6 (D. Or. 2007); *Trs. of Univ. of Penn. v. Lexington Ins. Co.*, 1986 WL 2785, at *3 (E.D. Pa. 1986), *aff'd in part, rev'd in part on other grounds*, 815 F.2d 890 (3rd Cir. 1987).

SSA, it would be limited to those fees and expenses only with respect to its counterclaims on which it was successful (as opposed to Freedom's affirmative claims, on none of which Freedom was found liable for any misconduct). (*See supra* § III.) With limited exceptions, however, neither BSF nor FK segregated its work by cause of action, making it impossible to tell which tasks related to failed or abandoned claims/counterclaims, including LC Counts Two and Six, the Withdrawn Counterclaims, LC's punitive damages request, and Freedom Counts III and IV (Studer Rpt. 14–16, 38–40, 48.) In circumstances like these—in which a moving party "achieved limited success in relation to the relief . . . sought"—"a trial court should decrease the lodestar." *Hansen*, 290 A.3d at 174 (reducing fee by 20%); *see Hansen Found.*, 2021 WL 3674354, at *19.[26] This reduction applies *even if* the losing claims were "interrelated, nonfrivolous, and raised in good faith." *Hansen*, 290 A.3d at 174 (quoting *Rendine*, 141 N.J. at 336); *accord Hansen Found.*, 2021 WL 3674354, at *19 (noting court should make deductions even where successful and unsuccessful claims involved a "common core of facts"). Courts regularly reduce fees in such circumstances. *See, e.g.*, *Spencer v. Wal–Mart Stores*, 469 F.3d

---

[26] *See also Szczepanski v. Newcomb Med. Ctr., Inc.*, 661 A.2d 1232, 1237 (N.J. 1995) (authorizing courts to either "attempt to identify specific hours . . . that should be eliminated [or] simply reduce the award to account for the limited success"); *Delaney v. Enter. Rent-A-Car Co.*, 2006 WL 1194274, at *7–8 (N.J. Super. Ct. App. Div. 2006) (finding abuse of discretion for not reducing fees for partial success).

311, 318–19 (3d Cir. 2006) (affirming 75% reduction based upon limited success).[27]

Moreover, where, as here, "the right to claim fees arises from a contract provision," "[t]here must be a correlation between the amount of a party's recovery and any award of attorney[s'] fees." *Ins. Restoration Specialists, Inc. v. 26 Kennedy Blvd. Assocs., Ltd.*, 2016 WL 1418113, at \*5 (N.J. Super. Ct. App. Div. 2016); *see also Ownbey*, 2023 WL 4447014, at \*3 (reduction appropriate based on requested fee versus overall award); *Hansen*, 290 A.3d at 173 ("The trial court's responsibility to review carefully the lodestar fee request is heightened in cases in which the fee requested is disproportionate to the damages recovered[.]" (quotation omitted)).

LC is seeking a bloated attorneys'-fees-and-expenses award of $11,421,976.35, over half as large as its ultimate damages award, and with other claimed fees, costs, and expenses discussed *infra* Section V, an award of $19,163,528.11, nearly equal to that damages award. Further, LC had limited success—it asked the jury to award $131 million on its counterclaims ($22.7 million on its post-transfer counterclaim, $8.3 million on its origination counterclaim, and $100 million in punitive damages), with the jury permitted to award up to $186

---

[27] *Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d 1031, 1044 (3d Cir. 1996) (concluding that court's reduction of fees by 50% "for partial lack of success" was proper); *Hansen Found.*, 2021 WL 3674354, at \*19, \*22 (reducing fees by 70%); *In re Est. of Vayda*, 2006 WL 3511351, at \*4–6 (N.J. Super. Ct. App. Div. 2006) (finding abuse of discretion for failing to consider that "success was limited and partial," and therefore reducing fees by 50%).

million had the jury awarded the full $31 million in compensatory damages. (Cuomo Decl. Ex. B, Trial Tr. 2427:10–12 (Singer: "[A]n award of $100 million would be appropriate."); D.E. 90 ¶¶ 76–190; D.E. 322 at 1–2.) In rejecting those claims, the jury awarded LC only $22.7 million, representing 17.33% of LC's jury-requested damages (a 82.67% discount) and 12.20% (a 87.80% discount) of LC's possible recovery—*without* alleged damages from the Withdrawn Counterclaims—going into trial. A correspondingly large discount on their fees and expenses is warranted.

## V.    LC'S OTHER REQUESTED FEES, COSTS, AND EXPENSES ARE UNRECOVERABLE.

Just as LC is barred from obtaining non-pleaded contractual attorneys' fees post-trial, it is barred from obtaining other contractual fees, costs, and expenses—elements of damages that LC has failed to plead and prove. *See Adwalls Media*, 2013 WL 375212, at *3; (*supra* § II). The Court can deny LC's requested recovery on that basis alone, as well as because Section 8.4 is otherwise inapplicable. (*Supra* § III.)

Even assuming LC were not foreclosed from the get-go, LC is incorrect in asserting its entitlement under Section 8.4 to all "litigation-related expenses." (Br. 6 n.2.) "In the absence of 'explicit' contractual authorization to the contrary, i.e., specific categories of costs," courts refuse costs beyond those awardable under 28 U.S.C. § 1920 or equivalent state statutes. *Cypress Drilling, Inc. v. Griffin*, 2010 WL 11691487, at *7 (W.D. La. 2010) (collecting cases); *see Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437, 445 (1987) ("[A]bsent explicit statutory or contractual

30

authorization for the taxation of . . . costs, federal courts are bound by the limitations set forth in . . . § 1920."); *Cook Children's Med. Ctr. v. New Eng. PPO Plan of Gen. Conso. Mgmt., Inc.*, 491 F.3d 266, 274–75 (5th Cir. 2007) (provision permitting "costs" not "explicit" authorization); *Google Inc. v. Beneficial Innovations, Inc.*, 2014 WL 4227366, at *7 (E.D. Tex. 2014) (denying expert fees where contract, although allowing for costs and expenses, "d[id] not explicitly include expert fees as recoverable costs"); *Culley v. Liberty Life Assurance Co. of Bos.*, 2010 WL 11693023, at *2 (D.N.J. 2010) (absence of "explicit" authorization for expert fees where provision allowed for "a reasonable attorney's fee and costs"); *Vistein v. Am. Registry of Radiologic Technologists*, 2010 WL 918081, at *3 (N.D. Ohio 2010) (limiting to § 1920 costs where contract did not specify costs beyond § 1920).[28]

Here, neither Section 8.4 nor Section 1.33 of the SSA enumerates specific cost categories beyond those permitted under § 1920, other than naming, in Section 1.33, "the allocable costs of in-house legal counsel and staff, and the reasonable travel and living expenses away from home of the officers, employees, agents and

---

[28] LC's cited authorities either never address the question of whether a contractual provision permitted recovery of costs above and beyond those in § 1920 (Br. 5–6 (citing *Ureteknologia de Mexico S.A. de C.v. v. Uretek (USA), Inc.*, 2020 WL 3127925, at *2 (S.D. Tex. 2020) & *Armada Bulk Carriers v. ConocoPhillips Co.*, 505 F. Supp. 2d 621, 623 (N.D. Cal. 2007)), or are readily distinguishable (*id.* at 6 (citing *GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co.*, 2023 WL 3294123, at *13 (E.D. Va. 2023) (allowing recovery of particular costs explicitly provided for in contractual provision))).

representatives of the aggrieved party." With respect to LC's requested costs, therefore, LC would be entitled to, if anything, only those taxable costs per § 1920.

**Expert Fees.** Under New Jersey law, expert fees are unrecoverable attorneys' expenses. *Josantocs Const. v. Bohrer*, 740 A.2d 653, 656 (N.J. Super. Ct. App. 1999); *see also Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (New Jersey law determines recoverability of attorneys' expenses).[29] And they are unrecoverable costs. *Buccinna v. Miceletti*, 710 A.2d 1019, 1023 (N.J. Super. Ct. App. Div. 1998). Indeed, New Jersey case law is marked by "a strong adherence to the general prohibition of expert fee awards in the absence of manifest statutory" or other authority. *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 975 A.2d 510, 522 (N.J. Super. Ct. App. Div. 2009); *Jasantocs Const.*, 740 A.2d at 656.

Here, the SSA provides no such manifest entitlement. *Maintainco*, 975 A.2d at 522 ("costs of the action" insufficient to permit expert fee recovery); *Jasantocs Const.*, 740 A.2d at 656 ("reasonable costs of suit" insufficient to permit expert fee recovery). Expert fees and expenses are mentioned nowhere in Section 1.33's definition of "Losses." *See, e.g.*, *Google*, 2014 WL 4227366, at *7 (denying expert

---

[29] The only cases within the Third Circuit cited by LC are off-point, as neither was a New Jersey federal diversity case necessitating the application of New Jersey law: *Orion Drilling Co., LLC v. EQT Prod. Co.*, 2019 WL 426738, at *5 (W.D. Pa. 2019) applied Pennsylvania law, and *Interfaith*, 426 F.3d at 699–701, was a federal-question case involving a fee-shifting statute, not a contract.

fees); *Culley*, 2010 WL 11693023, at *2 (same).

Even assuming the SSA permitted the recovery of expert fees, LC's request is unsupported. LC has failed to prove the reasonableness of its experts' hourly rates. *C.H. ex rel. M.H. v. Jefferson Twp. Bd. of Educ.*, 2005 WL 4122172, at *7 (D.N.J. 2005) (movants "must" establish reasonableness of expert rates "through affidavits by members of the community with skill and experience that is comparable to the expert in question" (citation omitted)); *Riggins v. Millville Bd. of Educ.*, 2005 WL 1863666, at *3 (D.N.J. 2005) (denying summary judgment where movant failed to submit affidavits as to expert rates). And the expert invoices either fail to give necessary detail to support the experts' work (*e.g.*, Singer Decl. Ex. 98 (PwC bill for vague "[s]ervices in support of [LC] litigation"), or **include no description of the work performed** *at all* (*id.* at Ex. 110–19 (Navigant), 123–36 (same), 137–38 (Guidehouse), 151 (NBNB)). *See, e.g., Perri v. Resorts Int'l Hotel, Inc.*, 2014 WL 201520, at *4 (D.N.J. 2014) (denying expert fees, where lack of documentation was "'obvious ground for denial'"); *C.H.*, 2005 WL 4122172, at *7 (expert invoices deficient where they contained "only abbreviated entries broadly describing the work alleged to be done"); *Mosaid*, 224 F.R.D. at 598–99 (denying expert fees where entries were "too vague to warrant reimbursement").[30]

---

[30] If recoverable at all, expert Nigel Brazier's bills require substantial reduction because LC was unsuccessful on its origination counterclaim for which he was the primary witness. (*See* Singer Decl. Exs. 146–53; *see also id.* at 149 (billing

**Document Review.** LC requests $1,737,683.75 incurred by vendor DiscoverReady ("DR"). To the extent this amount includes attorney hours, the same lodestar analysis described above would apply, with LC required to carry its burden of demonstrating the reasonableness of the attorneys' claimed rates and hours. (*Supra* § IV.)  But LC has failed to prove the reasonableness of the DR reviewers' hourly rates, submitting *no* information regarding their credentials. And LC makes no attempt to prove the reasonableness of DR's hours, with DR's invoices lacking any detail regarding the subject matter of the documents reviewed, the claims/counterclaims for which they were being reviewed, or any other justification for DR's *26,184.75 hours* spent. (Singer Decl. Exs. 168–76; Studer Rpt. 29, 46–48); *see J&J*, 2013 WL 11228425, at *34–35, *38; *Wyndham*, 2011 WL 2293334, at *3; *Hansen*, 290 A.3d at 173. At a minimum, DR's fees should be reduced substantially as excessive and/or duplicative, given that BSF attorneys spent an additional 2,697 hours on "[d]ocument review" above and on top of the hours spent by DR. (Studer Rpt. 29.)

**Document Management.** The Court should deny LC's $2,200,168.66 document management costs from Fidelity National Financial ("FNF"), a LC-

---

12.5 hours for a 9.5-hour deposition and 26.5 hours of "Deposition prep").) Although LC excluded certain such fees and expenses from Brazier's July 2023 invoice (*id.* at Ex. 154), it did not exclude any from his other invoices (*id.* at Exs. 146–53).

affiliated entity.[31] In this Circuit, courts deny requests for document hosting fees. *Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*, 2013 WL 1716468, at *10 (D.N.J. 2013). Indeed, since *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169 (3d Cir. 2012), "almost all district courts considering the issue . . . have held the costs of creating and maintaining an electronic discovery database are not recoverable under § 1920[,] except insofar as the costs involve scanning documents or converting documents to an agreed-upon format . . . ." *Id.* (citation omitted); *see, e.g.*, *Otsuka Pharm. Co. v. Sandoz*, Inc., 2015 WL 5921049, at *8 (D.N.J. 2015).[32] In short, discovery management activities leading up to production are unrecoverable. *Race Tires*, 674 F.3d at 171.

LC also fails to produce any detail regarding the requested FNF-incurred costs reflected in Singer Declaration Table 11-C. (Singer Decl. ¶ 19.) The listed $430,851.30 for "[p]rocessing," for instance, lacks required specificity regarding the tasks performed. (*Id.*); *see Camesi v. Univ. of Pittsburgh Med. Ctr.*, 673 F. App'x 141, 147–48 (3d Cir. 2016); *Race Tires*, 674 F.3d at 166 (finding "EDD processing," with no detail of "what that activity encompasse[d]", insufficient). Nor is there any

---

[31] LC fails to provide any reason why documents needed be kept live on systems (thus incurring substantial cost) "for the life of the litigation" (Br. 28), even during periods when there was limited-to-no case activity.

[32] DR's "Hosting Management" fees are unrecoverable for the same reason. (Singer Decl. Exs. 168–173, 175.)

specificity (or breakdown by personnel/rate) with respect to other listed categories in Table 11-C, including 1,032.55 hours of vague "Project Management Time."

**Jury Consultant and Mock Trial Vendor.** LC fails to justify its whopping $346,376.19 in jury consultant and mock trial costs, which are in addition to its unreasonable attorneys' fees regarding the same. Reimbursements for such "'premium services' are not generally awarded." *Rosario v. City of New York*, 2023 WL 2908655, at *14 (S.D.N.Y. 2023) (citation omitted); *Mallon*, 2019 WL 3297393, at *15; *see, e.g.*, *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2160017, at *15 (E.D.N.Y. 2010) (rejecting consulting fees, noting it would be "unreasonable to hold [opposing party] accountable for such premium services, which far exceed the standard litigation expenses of the average reasonable litigant").[33] LC's costs are even more unreasonable given that, as noted, LC is already seeking reimbursement for *two* mock trial sessions—one, years before trial commenced—for an excessive 1,032.99 hours spent. (*See, e.g.*, Singer Decl. Exs. 155–60; Studer Rpt. 10.)[34]

---

[33] *See also Goldstine*, 2021 WL 952325, at *5 (rejecting jury consultant costs)*; Squires ex rel. Squires v. Breckenridge Outdoor Educ. Ctr.*, 2013 WL 1231557, at *11 (D. Colo. 2013) (disallowing jury consultant costs); *Denesha v. Farmers Ins. Exch.*, 976 F. Supp. 1276, 1291–92 n.9 (W.D. Mo. 1997) (disallowing mock trial costs), *aff'd in part, rev'd in part on other grounds*, 161 F.3d 491 (8th Cir. 1998).

[34] *TransWeb* and *Pearce v. Emmi*, 2020 WL 2188787, at *4 (E.D. Mich. 2020), cited by LC, do not support LC's request. In *TransWeb*, the movant succeeded on all patent-related claims (here, LC did not succeed on all claims), 2013

**Demonstrative Aids.** LC fails to support its requested $47,430 in "demonstrative aids" costs.[35] Although LC relies exclusively on cases applying § 1920 (an implicit acknowledgment of their relevance), its reliance is misplaced. For instance, *Merck Sharp & Dohme Pharms., SRL v. Teva Pharms. USA, Inc.*, 2010 WL 1381413 (D.N.J. 2010) preceded *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012) and *Race Tires*, 674 F.3d at 171, which, in denying demonstrative costs, announced a "restrictive interpretation" of § 1920.[36] *Depomed, Inc. v. Actavis Elizabeth LLC*, 2018 WL 999673, at *16 (D.N.J. 2018) (declining to follow *Merck*); *see also Supernus Pharms., Inc. v. TWi Pharms., Inc.*, 2018 WL 2175765, at *17 (D.N.J. 2018). Following those decisions, courts in this Circuit have denied reimbursement. *See, e.g.*, *Supernus Pharms., Inc. v. TWi Pharms., Inc.*, 2018 WL 2175765, at *17 (D.N.J. 2018); *Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*, 2016 WL 1559144, at *14 (D.N.J. 2016); *Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*, 2013 WL 1876441, at *16 (D.N.J. 2013); *Warner*, 2013 WL

---

WL 11312429, at *13, and *Pearce* awarded only $18,625, unlike the hundreds of thousands requested here.

[35] LC makes no showing that the demonstratives—including those developed for mock trial sessions well before trial—were used in Court (at trial or otherwise) and thus necessary. (*See, e.g.*, Singer Decl. Ex. 162–64 (describing "Mock" slides and demonstratives).)

[36] The *Merck* court awarded demonstrative costs under § 1920 because of their importance in *patent* cases specifically, without making any pronouncement regarding the recoverability of such costs in non-patent litigation. *Id.* at *5.

1716468, at *12.[37]

LC also seeks recovery of fees for cutting and editing video deposition clips. This request, which LC fails to support with any authority, is routinely rejected by courts in this Circuit. *Pirl v. Ringling*, 2023 WL 2435443, at *23 (W.D. Pa. 2023); *In re Processed Egg Prod. Antitrust Litig.*, 610 F. Supp. 3d 697, 703 (E.D. Pa. 2022); *Mylan Inc. v. SmithKline Beecham Corp.*, 2015 WL 1931139, at *16 (D.N.J. 2015).

**"Hot Seat" Operator.** LC's requested $59,798.75 in "hot seat" operator costs, for which the SSA provides no express allowance, are unrecoverable. *E.g.*, *Mylan*, 2015 WL 1931139, at *16; *Warner*, 2013 WL 1716468, at *12–13; *see also K7 Design Grp., Inc. v. Five Below, Inc.*, 2023 WL 4108837, at *6 (E.D. Pa. 2023).

**Other Fees, Costs, and Expenses (Singer Decl., Table 13).** Charges for supplies, messengers, couriers, document reproduction and the like are "[a]dministrative expenses" that are "considered law firm overhead and not typically passed on to clients[.]" *Ownbey*, 2023 WL 4447014, at *21 (analyzing, under New Jersey law, costs per indemnification clause); *see also Bilazzo*, 876 F. Supp. 2d at 471 ("'Hours that would not generally be billed to one's own client are not properly

---

[37] LC cites the out-of-jurisdiction decision in *Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, 2020 WL 1557492, at *4 (E.D. Tex. Apr. 1, 2020), for the proposition that demonstratives help streamline the presentation of evidence. (Br. 27.) In this Circuit, however, the efficiency gained through demonstratives is an insufficient reason for the recovery of demonstratives-related costs. *E.g.*, *Depomed*, 2018 WL 999673, at *18.

billed to an adversary.'" (quoting *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)); *In re Est. of Reisen*, 713 A.2d 576, 583 (N.J. Super. Ct. Ch. Div. 1998) (normal postage, photocopying, telephone should not be charged, nor should courier services absent an emergency). And, without more detail, there is no way to determine whether such costs relate to counts on which LC prevailed.

LC's requested travel costs of Florida-based personnel from BSF and North Jersey local counsel FK are unrecoverable. (SSA § 1.33 (permitting only "reasonable" travel costs).) "[A] party that hires counsel from outside of the forum of the litigation may not be compensated for travel time[ or] travel costs" unless "forum counsel are unwilling to represent plaintiff[.]" [38] *Hahnemann*, 514 F.3d at 312 (citation omitted). LC has made no such showing. *See, e.g.*, *Ownbey*, 2023 WL 4447014, at *20; *Pretlow*, 2005 WL 3500028, at *9. BSF's bills also fail to give any detail regarding listed "[t]ravel expenses," including what the travel related to, the personnel who travelled, the days the travel occurred, or the travel locations, nor does LC provide any travel receipts. (*See, e.g.*, Singer Decl. Exs. 21, 42, 71, 74, 80.) From the limited information provided, however, it appears that LC is seeking thousands in three partners' travel expenses for a trip to *Las Vegas, NV*—a location

---

[38] LC also may not recover fees for setting up and dissembling their "war room" at BSF's hotel, necessitated only because BSF attorneys traveled from afar. (Singer Decl. Ex. 80 (4.3 hours for set up and 13.8 hours for disassembly).)

with no connection to this case. (*Id.* at Ex. 76.) LC's costs should be denied.[39]

LC also fails to give any indication of what its requested "Professional Expenses – Professional Fees" category represents, nor does it provide any support for the requested $116,242 in "Court Costs"—no receipts of transcript expenses, no indication of which costs were incurred, etc. Plainly, this fails to satisfy LC's burden. *See, e.g.*, *Hodges v. Corizon Health, Inc.*, 2020 WL 3717076, at *2 (D. Or. 2020) (rejecting costs without supporting itemization), *adopted*, 2020 WL 3650955 (D. Or. 2020); *Key Bank Nat'l Ass'n v. Van Noy*, 598 F. Supp. 2d 1160, 1168 (D. Or. 2009) (denying costs where party failed to explain charges). Lastly, LC's requested mediation costs are unrecoverable, with the SSA providing no express allowance. *E.g.*, *Romero v. CSX Transp., Inc.*, 270 F.R.D. 199, 205 (D.N.J. 2010).

## **CONCLUSION**

For these reasons, Freedom respectfully requests that the Court deny LC's Motion.

---

[39] To the extent treated as attorneys' expenses, such expenses should be reduced by half where counsel did not work while traveling. *See, e.g.*, *Zemurray*, 2022 WL 92802, at *4; *Access 4 All*, 2012 WL 3627775, at *8 n.20; *E.E.O.C. v. United Parcel Serv.*, 2009 WL 3241550, at *3 (D.N.J. 2009); (*see* Lack Decl. Exs. 52 (4.5 hours), 53 (2.6 hours), 57 (4 hours), 58 (3.3 hours), 58 (2.1 hours).)

Respectfully submitted,

/s/ Jerry A. Cuomo
Jerry A. Cuomo
Timothy J. Collazzi
Mark S. Landman (*pro hac vice*)
LANDMAN CORSI BALLAINE &
FORD P.C.
One Gateway Center, 22nd Fl.
Newark, NJ 07102

Wayne A. Mack (*pro hac vice*)
James H Steigerwald
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196

Brad D. Feldman
DUANE MORRIS LLP
1940 Route 70 East
Suite 100
Cherry Hill, NJ 08003-2171

*Attorneys for Plaintiff/Counterclaim
Defendant Freedom Mortgage
Corporation*

October 9, 2023